TOM BARNETT, APPELLANT, V. CITY OF SCOTTSBLUFF,
A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.
684 N.W.2d 553

Filed August 6, 2004. No. S-03-702.

Sterling T. Huff, of Island, Huff & Nichols, Attorneys at Law, P.C., L.L.O., for appellant.

Howard P. Olsen, Jr., and John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Tom Barnett's employment with the City of Scottsbluff, Nebraska, was terminated pursuant to the decision of the Scottsbluff city manager, Rick Kuckkahn. The termination resulted from Barnett's erroneous claim that he had attended an educational conference in Kearney, Nebraska. In accordance with the city's personnel manual, Barnett requested and was granted a hearing to challenge his termination of employment (formal hearing). The formal hearing was conducted before Kuckkahn on December 18 and 24, 2002. The formal hearing was transcribed. Witnesses testified under oath and were generally subject to cross-examination. Documents were received into evidence. Following the formal hearing, Kuckkahn issued a letter affirming the decision to terminate Barnett's employment with the city and setting forth the reasons therefor.

Barnett filed the instant petition in error proceeding with the district court for Scotts Bluff County, challenging the decision to terminate his employment. Barnett claimed, in summary, that his due process right to an impartial decisionmaker was violated and that Kuckkahn's decision was arbitrary and capricious. Following an evidentiary hearing, the district court affirmed the decision terminating Barnett's employment. Barnett appeals. We affirm the district court's decision.

## II. STATEMENT OF FACTS

At the time of Barnett's termination of employment, he had been employed by the city for approximately 25 years, working primarily in the city's sewage treatment facility, and held the title of "Utilities Capital Improvements Coordinator." He was licensed by the State of Nebraska in the wastewater management area, and he was required by the state to fulfill continuing education requirements to renew and retain that license.

From November 6 through 8, 2002, Barnett was scheduled to attend an educational conference in Kearney. Barnett's attendance at the conference was paid for by the city. Attendance at the conference would satisfy certain wastewater management licensure continuing education requirements. Prior to his attendance at the conference, Barnett completed and submitted to the state an "Operator Certification Renewal Application," claiming, inter alia, to have attended 6.5 "contact hours" at the Kearney conference. The record reflects that Barnett was required by the Nebraska Department of Environmental Quality to sign the application and that his signature "certif[ied] that all information contained in [the] application is true and current to the best of [Barnett's] knowledge and belief; [and that he] understand[s] that any fraud or deception may result in revocation of any certificate granted."

On November 5, 2002, Barnett drove to Kearney for the conference. On November 12, following his return from Kearney, Barnett submitted to the city a personnel action report (P.A.) form, which form was used by the city to track employee absences from work. On the P.A. form, Barnett stated as the reason for his absence "32 Hr Training Recertification Hs . . . Joint Water/WW [Wastewater] Conference in Kearney." Barnett also submitted to the city a voucher seeking reimbursement for mileage and lodging expenses incurred during the conference.

On November 18, 2002, Eva Johnston, the city's human resources director, received a complaint that Barnett had not actually attended any of the sessions held during the Kearney conference. Johnston reported the complaint to Kuckkahn, the city manager, who directed that Johnston conduct an investigation. Johnston investigated the report. On or about November 20, Johnston and Mark Bohl, Barnett's supervisor, met with Barnett to discuss with him the results of Johnston's investigation, which had confirmed Barnett's absence from any of the conference sessions. Barnett told them that he had been sick during the entire conference and had stayed in his hotel room, where he stated he had done some work. Barnett explained that he had tried to go to some of the sessions but had been too sick and had returned to his hotel room. When shown an agenda from the conference, Barnett could not identify which sessions he had attempted to

attend. Barnett acknowledged that he had not advised any of the other city employees attending the conference that he was sick, nor had he reported his illness to his supervisor or anyone else with the city. During the meeting with Johnston and Bohl, Barnett also stated that he had not advised the state that the certification form he had submitted verifying his attendance at the conference was incorrect. The record reflects that Barnett did not notify the state of the error in his certification renewal application until either December 3 or 4, approximately 1 month after the conference.

Following their meeting with Barnett, Johnston and Bohl prepared and presented to Kuckkahn a memorandum in which they recommended that as a result of Barnett's actions during and after the conference, his employment with the city should be terminated.

The Legislature has provided for, and the city has adopted, a city manager plan for its plan of government. See Neb. Rev. Stat. § 19-601 et seq. (Reissue 1997 & Cum. Supp. 2002). Under the statutes governing the city manager plan, a city council chooses its city manager, § 19-618, who in turn is responsible "for the proper administration of all affairs of the city," § 19-645. The city manager's duties include the following:

> (1) to see that the laws and ordinances are enforced, (2) to appoint and remove all heads of departments and all subordinate officers and employees in the departments in both the classified and unclassified service, which appointments shall be upon merit and fitness alone, and in the classified service all appointments and removals shall be subject to the civil service provisions of the Civil Service Act, [and] (3) to exercise control over all departments and divisions thereof that may be created by the council[.]

§ 19-646. Pursuant to § 19-647, the city manager is authorized to investigate employee conduct and "shall have the same power to compel the attendance of witnesses and the production of books and papers and other evidence . . . which has herein been conferred upon the [city] council." Under a city manager plan form of government, the city council is required to "deal with the administrative service solely through the city manager, and neither the council nor any member thereof shall give orders to

any of the subordinates of the city manager, either publicly or privately." § 19-618.

On November 22, 2002, Kuckkahn met with Barnett. Kuckkahn informed Barnett of Johnston and Bohl's recommendation that Barnett be terminated. Kuckkahn sought Barnett's response to that recommendation. Later on that same day, Kuckkahn met with Barnett a second time, at which time he presented Barnett with a letter informing him that his employment with the city had been terminated. The letter outlined the reasons for Barnett's termination, which included his failure to notify his supervisor of his illness, the P.A. form he had completed which "represented attendance at the conference . . . with no mention of sick leave," and his failure to correct the state certification renewal application he had completed, in which he had erroneously certified his attendance at the Kearney conference. The letter stated that these actions constituted violations of § 3.2a(2), (7), and (23) of the city's personnel manual, in that Barnett had (1) failed to meet the prescribed standards of work, morality, and ethics to an extent that makes an employee unsuitable for employment; (2) demonstrated insubordination or a failure to hold a supervisor's position in respect; and (3) acted or failed to act in a manner which was sufficient to show Barnett to be an unsuitable and unfit person for city employment.

Following Barnett's termination of employment, he requested a formal hearing to contest his termination pursuant to § 3.2c of the city's personnel manual, which provides as follows:

> An employee . . . not subject to the Civil Service laws of the State of Nebraska, who has been demoted, suspended, or dismissed by the City Manager may request a formal hearing . . . .
>
> . . . .
>
> The City Manager will, in writing, set a date, time, and place for a hearing to further evaluate the case . . . .
>
> The employee may represent himself or be represented by counsel of his choice at the hearing.
>
> Proceedings at the hearing may be recorded as the City Manger [sic] may direct or approve. . . .
>
> Within ten days after the completion of the hearing, the City Manager shall enter his findings, determination, and

orders, if any, and a copy of such will be delivered or mailed by certified mail within five work days of such entry.

Kuckkahn set the formal hearing for December 18, 2002, and notified Barnett in writing of the hearing date. On December 11, Barnett filed a "Motion to Disqualify," seeking to have Kuckkahn disqualified as the hearing officer for the December 18 formal hearing. Barnett claimed that Kuckkahn was not an impartial decisionmaker, citing Kuckkahn's involvement in Barnett's employment termination and the likelihood that Barnett would call Kuckkahn as a witness. In a letter dated December 17, Kuckkahn overruled the motion, stating, in part, that he was "the only official in the City Manager form of government with the authority to conduct such a hearing. There is no statutory or city power providing for an alternative."

The formal hearing, which was transcribed, was held on December 18 and 24, 2002. Kuckkahn presided. Barnett was represented by an attorney during the formal hearing, and he was permitted to present evidence in opposition to his termination. Barnett, Bohl, Johnston, and Terri Rose, Bohl's administrative records technician, appeared as witnesses and testified under oath. Barnett also called Kuckkahn as a witness. Kuckkahn provided sworn testimony. Approximately 20 exhibits were admitted into evidence.

Barnett's attorney was allowed to and did cross-examine the witnesses extensively regarding the circumstances surrounding Barnett's employment with the city and the termination of that employment. During the formal hearing, Barnett's attorney attempted to solicit evidence from Bohl, Johnston, and Kuckkahn regarding other individuals whose employment had been terminated by the city. Although Barnett's attorney was permitted to elicit general testimony regarding the circumstances surrounding other employment terminations, he was not permitted by Kuckkahn to go into such detail as might lead to the identification of the former employees.

Following the formal hearing, in a letter dated January 8, 2003, Kuckkahn upheld the decision to terminate Barnett's employment. In the letter, Kuckkahn outlined the reasons behind the decision, including the inaccurate P.A. form Barnett submitted which suggested that he had attended the conference when in

fact he had not attended any of the sessions, his failure to report his illness to his supervisor, and the inaccurate certification form Barnett had submitted to the state. Kuckkahn concluded that these actions, among others, constituted violations of § 3.2a(2), (7), and (23) of the personnel manual, and as a result, Kuckkahn affirmed the decision to terminate Barnett's employment with the city.

Thereafter, on February 5, 2003, Barnett filed a petition in error proceeding with the district court. It is the outcome of the petition in error proceeding which Barnett now appeals. On May 21, a hearing was held on the petition in error, during which hearing the exhibits and the transcribed testimony from the formal hearing were received into evidence. In its oral pronouncement made following the hearing on the petition in error, the district court concluded that there was sufficient evidence to support the city's decision to terminate Barnett's employment. The district court further concluded that Barnett had not been denied procedural due process. The district court concluded that Barnett had failed to make a "showing of actual bias or actual partiality, or animosity, or financial interest, or anything like that that would indicate . . . Kuckkahn made [the] decision on those grounds, as opposed to giving it an honest and objective taking a second look at it, which was done." In an order entered May 29, the district court affirmed the decision to terminate Barnett's employment.

Barnett appeals from the district court's order affirming Barnett's termination from employment with the city.

### III. ASSIGNMENTS OF ERROR

On appeal, Barnett assigns seven errors, which can be restated as five. Barnett asserts, restated and renumbered, that the district court erred in (1) failing to determine that §§ 19-646 and 19-647 violate Barnett's procedural due process rights, (2) failing to determine that §§ 19-646 and 19-647 and the personnel manual violate Barnett's rights to equal protection under Neb. Const. art. I, § 6, and the 14th Amendment to the U.S. Constitution, (3) failing to conclude that Kuckkahn made erroneous evidentiary rulings during the formal hearing, (4) failing to determine that the procedures adopted by the city in its personnel manual and used by the city during the formal

hearing violated Barnett's procedural due process rights, and (5) failing to conclude that the decision to terminate Barnett's employment was arbitrary and capricious and unsupported by the evidence.

We do not consider Barnett's first through third assignments of error. The record fails to reflect that Barnett raised his equal protection claim during the district court proceedings. Accordingly, we decline to consider this assignment of error on appeal. See *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003) (stating that constitutional issue not presented to or passed on by lower tribunal is not appropriate for consideration on appeal). Furthermore, in his briefs on appeal, Barnett does not present argument that supports his assertion that §§ 19-646 and 19-647 violate his due process rights, or that Kuckkahn made erroneous evidentiary rulings. As a result, we likewise decline to consider these assignments of error on appeal. See *Misle v. HJA, Inc.*, 267 Neb. 375, 382, 674 N.W.2d 257, 263 (2004) (stating that to be considered on appeal "an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error").

## IV. STANDARDS OF REVIEW

In reviewing the decision of an administrative tribunal on a petition in error, both the district court and the appellate court review the decision of the tribunal to determine whether it acted within its jurisdiction and whether the decision of the tribunal is supported by sufficient relevant evidence. See *Cornett v. City of Omaha Police & Fire Ret. Sys.*, 266 Neb. 216, 664 N.W.2d 23 (2003). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. See *id.*

The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *In re Estate of Reed*, 267 Neb. 121, 672 N.W.2d 416 (2003). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Tri-Par Investments v. Sousa, ante* p. 119, 680 N.W.2d 190 (2004).

## V. ANALYSIS

### 1. DUE PROCESS

#### (a) General Due Process Requirements

We first turn to Barnett's contention that the formal hearing, conducted according to § 3.2c of the city's personnel manual, violated his procedural due process rights. We note that the city does not challenge Barnett's claim that he was entitled to procedural due process during this proceeding. Instead, what is generally at issue in this case is whether the procedures afforded Barnett satisfied due process.

We have stated that the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003); *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001). We have recognized that although "the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner." *Hass v. Neth*, 265 Neb. at 328, 657 N.W.2d at 20. Accord *Marshall v. Wimes, supra*. With regard to proceedings before an administrative agency or tribunal, we have stated that procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial decisionmaker. *Id.*

#### (b) Impartial Decisionmaker

Barnett claims that the hearing procedures set forth in the city's personnel manual and provided at the formal hearing violated his procedural due process rights. Specifically, Barnett claims that the procedures are unconstitutional because they did not provide for an independent and unbiased review before an impartial decisionmaker. In support of his argument, Barnett relies on *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997). We conclude that the procedures provided to Barnett comported with the procedural due process requirement of an impartial decisionmaker and that Barnett's reliance on *Crown Products Co.* is misplaced.

As noted above, in formal agency adjudications, as in court proceedings, due process requires a neutral, or unbiased, adjudicatory decisionmaker. See, *Urwiller v. Neth*, 263 Neb. 429, 640 N.W.2d 417 (2002); *Central Platte NRD v. State of Wyoming*, 245 Neb. 439, 513 N.W.2d 847 (1994). We have recognized that administrative adjudicators serve with a presumption of honesty and integrity. *Id.* In *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993), we noted that judges and arbitrators are subject to the same ethical standards. By extension, we have said that ethical standards apply to administrative hearing officers. See *Urwiller v. Neth, supra.*

We have also identified factors that may indicate partiality or bias on the part of an adjudicator. The factors are a pecuniary interest in the outcome of the proceedings, a familial or adversarial relationship with one of the parties, and a failure by the adjudicator to disclose the suspect relationship. *Urwiller v. Neth, supra*; *Dowd v. First Omaha Sec. Corp., supra.* Nonetheless, the party seeking to disqualify an adjudicator on the basis of bias or prejudice "bears the heavy burden" of overcoming the presumption of impartiality. *Urwiller v. Neth*, 263 Neb. at 435, 640 N.W.2d at 423.

Initially we note that Barnett does not claim, nor does the record reflect, that Kuckkahn participated in the investigation into the facts that formed the basis of the termination of Barnett's employment. Thus, we are not confronted with a situation in which the adjudicator was also the investigator. See *Withrow v. Larkin*, 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed 2d 712 (1975). Instead, Barnett argues that Kuckkahn was not an impartial decisionmaker because of his familiarity with the circumstances of the case and because he was the city official who rendered the initial decision to terminate Barnett's employment. Barnett claims that given § 3.2c of the city's personnel manual, which provides for the city manager to conduct the formal hearing, and Kuckkahn's refusal to disqualify himself from the hearing, Barnett was denied procedural due process during his formal hearing. We disagree.

In *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Ed. Assn.*, 426 U.S. 482, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976) (*Hortonville*), the U.S. Supreme Court considered a due process challenge in a

teacher disciplinary context. After negotiations for renewal of a collective bargaining contract failed to produce an agreement, certain teachers went on strike, in violation of state law. The teachers were ordered to return to work, and when some refused, the school board conducted disciplinary hearings. The hearings resulted in the termination of the striking teachers' employment with the school district. Certain of the terminated teachers challenged the hearings on due process grounds, claiming the school board lacked the requisite impartiality due to its involvement in the contract negotiations.

The issue the Court considered in *Hortonville* was "whether School Board members, vested by state law with the power to employ and dismiss teachers, could, consistent with the Due Process Clause of the Fourteenth Amendment, dismiss teachers engaged in a strike prohibited by state law." 426 U.S. at 483-84. The Court concluded there was no due process violation present in the case.

The Court was unpersuaded by the teachers' claim that the school board was biased because it had participated in the negotiations that preceded the striking teachers' discharge. The Court observed:

> Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker. . . . Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances."

(Citations omitted.) 426 U.S. at 493 (quoting *United States v. Morgan*, 313 U.S. 409, 61 S. Ct. 999, 85 L. Ed. 1429 (1941)).

In analyzing the teachers' due process claim in *Hortonville*, the U.S. Supreme Court noted that participation in the negotiations was a statutory duty of the school board, as was the school board's authority to discipline the teachers. The Court noted that under state law, the school board had broad authority over the management of the school district and its teachers, and that the school board was the only body authorized to employ and dismiss the teachers. Given the foregoing duties, the Court determined that the school board could, consistent with due process

concerns, conduct the disciplinary hearing and render a decision. In reaching this decision, the Court stated:

> State law vests the governmental, or policymaking, function exclusively in the School Board and the State has two interests in keeping it there. First, the Board is the body with overall responsibility for the governance of the school district; it must cope with the myriad day-to-day problems of a modern public school system including the severe consequences of a teachers' strike . . . . Second, the state legislature has given to the Board the power to employ and dismiss teachers, as a part of the balance it has struck in the area of municipal labor relations; altering those statutory powers as a matter of federal due process clearly changes that balance. Permitting the Board to make the decision at issue here preserves its control over school district affairs, leaves the balance of power in labor relations where the state legislature struck it, and assures that the decision whether to dismiss the teachers will be made by the body responsible for that decision under state law.

*Hortonville*, 426 U.S. at 495-96. See, also, *Beischel v. Stone Bank School Dist.*, 362 F.3d 430 (7th Cir. 2004) (applying *Hortonville* reasoning to conclude school administrator who had been notified by school board that her contract might not be renewed was not denied due process where school board was body authorized under state law both to renew administrators' contracts and to conduct nonrenewal hearing).

In *Hortonville*, the Court concluded that given the state's interest as articulated in its statutes in preserving the board's governing authority, and given the presumption of honesty and integrity that is afforded administrative decisionmakers, absent some evidentiary presentation of actual bias or partiality on the part of the board, a mere showing that the school board had been involved in the proceedings that led up to the teachers' strike was insufficient to disqualify the board as a matter of federal due process. We apply the *Hortonville* reasoning to the state and federal due process claim in the instant case.

As noted above, the city has elected to follow the city manager plan of government. See § 19-601 et seq. Under the statutes governing the city manager plan, the city manager is responsible "for

the proper administration of all affairs of the city," § 19-645, and his or her duties include appointing and removing all heads of departments and all subordinate officers and employees in the departments in both the classified and unclassified service, § 19-646. In accordance with the Nebraska statutes, under a city manager plan form of government, the city council is required to "deal with the administrative service solely through the city manager, and neither the council nor any member thereof shall give orders to any of the subordinates of the city manager, either publicly or privately." § 19-618.

As in *Hortonville*, in the instant case, state law vests in Kuckkahn the authority to make employment decisions. The formal hearing procedure set forth in the personnel manual and Kuckkahn's decision not to disqualify himself are reflections of that authority established by state law. Because under state law Kuckkahn had broad authority over the management of city employees and was the only person authorized to employ and dismiss city employees, absent a showing of a lack of impartiality, he could, consistent with due process concerns, conduct the formal hearing and render a decision.

A party seeking to disqualify an adjudicator on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of impartiality. *Urwiller v. Neth*, 263 Neb. 429, 640 N.W.2d 417 (2002). In the instant case, the district court found that Barnett had failed to demonstrate "actual bias or actual partiality, or animosity, or financial interest" on the part of Kuckkahn. The record supports these determinations. Some evidence of Kuckkahn's involvement in the employment termination process, without more, is not enough to overcome the presumption of honesty and integrity applicable to administrative adjudicators. *Id.* Accordingly, the district court did not err when it indicated that Barnett had failed to carry his burden of demonstrating that the decisionmaker was biased or was adverse to Barnett, such that would disqualify a decisionmaker based on due process grounds.

Despite the lack of evidence demonstrating Kuckkahn's purported partiality as a decisionmaker, Barnett claims that under this court's decision in *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997), Kuckkahn was required to recuse himself. Barnett's reliance on *Crown Products Co.* is

misplaced. In *Crown Products Co.*, the City of Ralston entered into a purchase contract with Crown Products Company (Crown) to purchase a production facility located in Ralston. Before the purchase could be finalized, however, Ralston required Crown to conduct additional environmental tests on the property. Those tests were performed, and as a result of the test results, Ralston refused to continue with the purchase contract. Thereafter, Ralston and Crown worked together to address Ralston's environmental issues.

After approximately 2 years, the Ralston City Council notified Crown that it was no longer interested in purchasing Crown's property. The property was sold at auction for an amount significantly lower than Ralston's offer, and Crown filed a claim for breach of contract damages with Ralston.

A hearing was held on Crown's claim before the Ralston City Council. Several city council members, who were members of the council when Ralston had entered into the purchase contract with Crown and when Crown and Ralston had attempted to resolve the environmental concerns, submitted affidavits into the hearing record over Crown's objection. Crown was not permitted to cross-examine the council members. Following the hearing, the city council voted unanimously to deny Crown's claim. Crown filed a petition in error, and the district court reversed based on its conclusion that Crown had been denied due process because it had not received a fair and impartial hearing before the city council. We affirmed.

On appeal to this court, we agreed with the district court that the actions taken by the city council violated Crown's due process rights. We stated that the actions taken by the city council "essentially thwarted Crown's only opportunity to create a record supporting its position. Crown was effectively prohibited from executing a proper cross-examination of council members regarding submitted affidavits." *Id.* at 7, 567 N.W.2d at 298. We expressed concern surrounding the city council members' personal knowledge of the underlying facts, gained from their involvement in the 2-year process of attempting to finalize the purchase of the Crown property. As a result, we agreed with the district court that under the facts of the case, the city council members should have recused themselves from the decisionmaking process.

Unlike *Crown Products Co.*, in the instant case, Kuckkahn had no firsthand knowledge of the underlying facts. Specifically, Kuckkahn had no independent knowledge of Barnett's erroneous claims surrounding the Kearney conference, which are the events that led up to Barnett's termination of employment. Significantly, Kuckkahn was not involved directly in the investigation of any facts that resulted in Barnett's termination. Moreover, unlike *Crown Products Co.*, Barnett was permitted to examine Kuckkahn under oath regarding Barnett's termination. Kuckkahn's refusal to testify about the specifics of disciplinary actions involving other city employees did not deny Barnett an opportunity for a fair hearing regarding his own dismissal. The denial of due process exhibited in *Crown Products Co.* is not present in the instant case.

We agree with the district court that Barnett has failed to demonstrate that the hearing procedures set forth in the city's personnel manual and provided at the formal hearing violated his procedural due process rights. Accordingly, we determine that there is no merit to this assignment of error.

## 2. SUFFICIENCY OF EVIDENCE

For his remaining assignment of error, Barnett claims that the district court erred when it determined that Kuckkahn's decision affirming the termination of Barnett's employment with the city was supported by sufficient evidence. We reject this assignment of error.

The record contains evidence, although disputed in part by Barnett, that demonstrates Barnett's failure to comply with the appropriate procedures regarding the completion of his P.A. form, as well as his submission of an inaccurate form to the state, which form he certified was true and correct. Kuckkahn reviewed the city's personnel manual and, following the formal hearing, concluded in his January 8, 2003, letter, that these actions, and others, established that Barnett had (1) failed to meet the prescribed standards of work, morality, and ethics to an extent that makes an employee unsuitable for employment; (2) demonstrated insubordination or a failure to hold a supervisor's position in respect; and (3) acted or failed to act in a manner which was sufficient to show Barnett to be an unsuitable and

unfit person for city employment. In particular, Kuckkahn concluded that these actions, among others, constituted violations of § 3.2a(2), (7), and (23) of the personnel manual. As a result, Kuckkahn affirmed the decision to terminate Barnett's employment with the city.

In reviewing the decision of an administrative tribunal on a petition in error, both the district court and the appellate court review the decision of the tribunal to determine whether it acted within its jurisdiction and whether the decision of the tribunal is supported by sufficient relevant evidence. See *Cornett v. City of Omaha Police & Fire Ret. Sys.*, 266 Neb. 216, 664 N.W.2d 23 (2003). We agree with the district court that Kuckkahn's conducting the formal hearing was within his jurisdiction and that the testimony and exhibits contained in the record support the decision affirming Barnett's termination of employment. Accordingly, we conclude there is no merit to this assignment of error.

## VI. CONCLUSION

The district court determined that Barnett was afforded due process, that the decision to terminate Barnett's employment with the city was neither arbitrary nor capricious, and that the termination was supported by the evidence. The district court's decision affirming the city's decision to terminate Barnett's employment with the city was not error, and we affirm.

AFFIRMED.

WRIGHT, J., participating on briefs.