753 N.W.2d 854 (2008)
16 Neb. App. 837
David McKEE, appellant,
v.
CITY OF HEMINGFORD Village Board of Trustees, appellee.
No. A-07-862.
Court of Appeals of Nebraska.
July 8, 2008.
*857 David B. Eubanks, of Pahlke, Smith, Snyder, Petitt & Eubanks, G.P., Scottsbluff, for appellant.
Steven W. Olsen, of Simmons Olsen Law Firm, PC, Scottsbluff, for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
By petition in error, David McKee challenged his termination for insubordination as chief of police for the Village of Hemingford. From an adverse judgment, McKee appeals. Because we conclude that McKee received adequate pretermination procedural due process and that sufficient evidence was presented to support the original decision, we affirm the judgment.

BACKGROUND
Although the caption of McKee's petition in error seems to identify the municipality as a "city," both parties cite Neb.Rev.Stat. § 17-208 (Reissue 1997), which is applicable only to villages, as a controlling statute. As the remainder of the record refers to Hemingford as a "village," we treat the municipality as such.
At the relevant times in 2006, the police department in Hemingford consisted of only three officers, including McKee. In early July, McKee properly requested vacation time for an extensive period from late September to mid-October. Margaret A. Sheldon, the village administrator, approved McKee's request. McKee made significant arrangements based on the approval. However, later in July, circumstances began to change.
On July 31, 2006, one of the two other officers resigned. On August 15, the remaining officer resigned, in part due to McKee's denial of the full extent of her *858 request for vacation time to see a sick relative. On August 29, the village's board of trustees held a meeting, discussing at length the vacation requests and actions. Sheldon later testified that the board spent 4½ hours in executive session "split between talking about . . . McKee's job performance and . . . asking how we could solve this problem because then we would be down to no officers if [McKee] took his vacation." According to the minutes, the board voted to
deny . . . McKee's three weeks['] vacation starting September 27 due to the lack of personnel in the Police Department to cover the vacation time, and [McKee] must show up for duty on September 27, if not he is terminated, a resignation would be accepted up to 10 working days prior to September 27.
However, the board's involvement did not end with the August 29 meeting.
On the evening of September 5, 2006, the board held a regular meeting. The third item on the agenda was "Police," with a further description of "[f]ollow-up on action taken at August 29th meeting." According to Sheldon's subsequent testimony, on the afternoon of September 5, she talked to McKee at the request of the chairman of the board. Sheldon told McKee that during the meeting, he would be asked by the board whether he still intended to take his vacation starting on September 27. At the meeting, McKee received the question. He answered in the affirmative. A board member then moved to terminate McKee's employment effective immediately for insubordination. During approximately 20 minutes of discussion between McKee and the board, McKee stated on at least three occasions that he had not decided whether he would take the vacation as planned and that he had been trying to find officers to cover the time period that he hoped to be gone. The motion to terminate was then repeated, seconded, and approved by a vote of four to one.
A written notice of termination bearing the signature of the board's chairpersonwas prepared on September 6, 2006, and personally delivered to McKee on September 7. The notice stated:
May this serve as official notice of termination of your position as Chief of Police for the Village of Hemingford. The reason for termination being insubordination. The date of termination being September 5, 2006. Please be further advised that pursuant to Village Ordinance you are entitiled [sic] to a hearing before the Village Board of Trustees.
McKee requested the appeal contemplated by § 17-208(2). On October 25, 2006, McKee received a hearing before the village board. An independent attorney employed by the village served as a hearing officer to conduct the proceeding. The chairperson of the village board, who had signed the notice of termination, did not participate as a board member in the hearing or decision on appeal. To the extent necessary, any further evidence from the hearing will be discussed in the analysis section below.
Although the action of the board in response to the hearing does not otherwise appear in the record, paragraph 7 of McKee's later petition in error alleged, and the village's answer admitted, that the board failed to take action on the appeal within 30 days after the adjournment of the hearing. Under § 17-208(2), such failure to act is "construed as a vote to uphold the removal or disciplinary action."
McKee filed a timely petition in error to the district court for Box Butte County, Nebraska. On July 26, 2007, the court found that the village board had jurisdiction to dismiss McKee and that the evidence *859 supported the dismissal. The court stated, "The [v]illage [b]oard had a responsibility to provide police protection for the [v]illage, and when [McKee] refused to provide the same, the board took the only action available to them." The court dismissed McKee's petition in error.
McKee timely appeals to this court.

ASSIGNMENTS OF ERROR
McKee first assigns that the district court erred in finding that he was afforded pretermination due process. He also asserts that the court erred in finding that he received sufficient notice of the formal charges and that there was sufficient evidence to support the termination.

STANDARD OF REVIEW
In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision of the administrative agency to determine whether the agency acted within its jurisdiction and whether the decision of the agency is supported by sufficient relevant evidence. Hickey v. Civil Serv. Comm. of Douglas Cty., 274 Neb. 554, 741 N.W.2d 649 (2007). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did based on the testimony and exhibits contained in the record before it. Pierce v. Douglas Cty. Civil Serv. Comm., 275 Neb. 722, 748 N.W.2d 660 (2008). In addition, the administrative action must not be arbitrary or capricious. Id. The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. Id.
The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. Hickey v. Civil Serv. Comm. of Douglas Cty., supra. On a question of law, an appellate court is obligated to reach a conclusion independent of the court below. Id.

ANALYSIS

Pretermination Due Process.
Because McKee enjoyed a property right in continued employment, he was entitled to pretermination due process. As the U.S. Supreme Court observed in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. In the village's brief, it concedes that § 17-208 and the Hemingford personnel manual created this property right.
In the subsequent appeal to the village board, McKee received a full administrative hearing. Clearly, this administrative hearing was a postdeprivation hearing. See Pierce v. Douglas Cty. Civil Serv. Comm., supra. Orders made in the exercise of judicial functions by a board or tribunal inferior to the district court are reviewable by proceedings in error. Hawkins v. City of Omaha, 261 Neb. 943, 627 N.W.2d 118 (2001). Thus, under Nebraska law, after the full administrative hearing McKee was entitled to judicial reviewa right which he exercised.
Prior to the termination, however, McKee was entitled only to a more limited process. The tenured public employee is entitled to oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her *860 side of the story. Cleveland Board of Education v. Loudermill, supra. We address each requirement in turn.
First, McKee received oral notice of the charge against him. Prior to the September 5, 2006, board meeting, the board notified McKee of its complaint against him his stated intention to take vacation time as originally scheduled in spite of the resignations of the village's only other police officers. McKee received such notice in the August 29 meeting, in which he actively participated. At this meeting, he certainly became aware of the board's concern regarding the effect upon public safety. The board's August 29 actionexpressly denying the vacation time, requiring him to "show up" for duty, and authorizing a resignation up to 10 days before the scheduled datecommunicated the board's resoluteness that he not respond in violation of the board's decision. Taken alone, the board's action of August 29 notified McKee that his job was in jeopardy of termination. McKee received additional notice from Sheldon. On September 5, but prior to the meeting, Sheldon orally notified McKee of the board's further objective to obtain a more definitive response from McKee regarding his intention to comply with or violate the board's requirement that he forgo the scheduled vacation. She notified him that the specific question would be raised at the September 5 meeting. Thus, McKee received sufficient pretermination notice of the complaint against him.
Second, it was clear that the village's evidence against him stemmed from his own statements. The subject was thoroughly discussed at the August 29, 2006, meeting. Sheldon's verbal notice on September 5 confirmed that the evidence against him consisted essentially of his own statements and communications to village officials. McKee's statements were examined at length in the September 5 meeting.
Finally, the September 5, 2006, meeting afforded McKee the opportunity to tell his side of the story. The evidence shows that he did so at length, primarily by attempting to explain that he had not made up his mind whether to accede to the board's earlier determination. Much of this discussion and explanation by McKee occurred during a 20-minute period after a motion had been made but not yet adopted to terminate his employment for insubordination. Clearly, the motion communicated in unmistakable fashion the board's determination to obtain compliance with its earlier action dispensing with McKee's scheduled vacation. The evidence shows that the village afforded McKee the pre-termination process required by Cleveland Board of Education v. Loudermill.
In arguing that the village failed to provide prior to the September 5, 2006, meeting the written notice required by § 3-703 of the Hemingford Municipal Code, McKee confuses the statutory method for effecting a termination with the constitutional due process requirement of pretermination notice. Section 17-208(1) authorizes a police officer who has been removed from office to "request a review by the village board of his or her removal." It also contemplates action by the village board "[a]fter a hearing." Section 17-208(2) requires villages to "by ordinance adopt rules and regulations governing the removal or discipline of any police officer," which rules and regulations must include "a procedure for making application for an appeal" and "provisions on the manner in which the appeals hearing shall be conducted." It also mandates that "[b]oth the police officer and the individual imposing the disciplinary action shall have the right at the hearing to be heard and to present evidence to the village board for its consideration." *861 Section 3-703 implements the statutory requirements, providing:
(1) No police officer, including the Village Marshal, shall be ... removed[] or discharged except upon written notice stating the reasons for such ... removal[] or discharge. Such notice shall also contain a statement informing the police officer of his or her right to a hearing before the Board of Trustees.
(2) Any police officer so ... removed[] or discharged may ... file ... a written demand for a hearing before the Board of Trustees.... The Board of Trustees shall give the police officer written notice of the hearing....
(3) At the hearing, the police officer shall have the right to: (a) respond in person to the charges and to present witnesses and documentary evidence; (b) confront and cross-examine available adverse witnesses; and [(c)] be represented by counsel.
....
(5) Nothing in this section shall be construed to prevent the ... immediate removal from duty of an officer, pending the hearing authorized by this section, in cases of gross misconduct, neglect of duty, or disobedience of orders.
The notice contemplated by § 3-703(1) is not a pretermination notice; rather, it constitutes the very act of termination. The hearing provided by § 3-703 implements postdeprivation procedural due process, providing a full evidentiary hearing with the hallmarks of due process. State law provides the opportunity for subsequent judicial review. All process that is due is provided by a pretermination opportunity to respond, coupled with posttermination procedures. Unland v. City of Lincoln, 247 Neb. 837, 530 N.W.2d 624 (1995). The constitutionally-mandated pretermination notice may be oral or written. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Because the village provided all required pretermination due process, we reject McKee's first assignment of error.

Sufficiency of Formal Notice of Termination.
McKee's second assignment of error includes two separate concepts, which we address in turn. We first examine whether the written notice of termination, quoted in the background section above, complied with the requirements of § 17-208 and the ordinance, § 3-703.
We have already explained that the pretermination notice required by due process may be given orally and that the notice given was sufficient. In reviewing the notice required by § 3-703, we are not addressing a pretermination notice; rather, this section prescribes the content of the formal act of termination.
Section 17-208 does not itself specify any requirements for the formal act of termination. Section 17-208(2) requires the municipality to adopt by ordinance appropriate rules and regulations governing the removal or discipline of any police officer. It also prescribes mandatory features for these rules and regulations, which features we have already noted. The ordinance, in turn, implements these statutory mandates.
The ordinance, § 3-703, requires that the notice of formal discharge (1) be in writing, (2) state the reasons for the action, and (3) contain a statement informing the officer of his or her right to a posttermination hearing. The notice provided in the instant case complied with all three requirements.
Although it is not entirely clear, McKee seems to argue that the notice failed in two respects. First, he claims that it was not *862 in writing. Obviously, the notice served upon him was in writing. In this argument, he seems to be claiming that the written notice had to be given at the very instant the motion was adopted on September 5, 2006. We disagree. Section 3-702(J) of the Hemingford Municipal Code contemplates that the village marshal will hold office for 1 year, "unless sooner removed by the Chairman of the Village Board, with the advice and consent of the Trustees." The action taken by the board on September 5 constituted the required "advice and consent." The actual removal was accomplished by the written action of the chairperson, signed on September 6. Thus, removal requires the accomplishment of two actions: the chairperson's "remov[al]" and the board's "advice and consent." Neither the state statute nor the village ordinances imposes the requirement of simultaneity urged by McKee. We find the formal notice of termination complied with the timing contemplated by the ordinances.
Second, McKee seems to argue that the notice failed to specify the reasons for termination. Once again, he confuses the due process requirement of pretermination notice with the ordinance's requirement of specified reasons for the termination. The notice of termination specified the reason as insubordination. Section 3-703(1) requires no more. We reject this argument and turn to the remaining component of McKee's second assignment of error.

Sufficiency of Evidence.
McKee also argues that there was insufficient evidence to support the board's action upholding the termination. The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did based on the testimony and exhibits contained in the record before it. Pierce v. Douglas Cty. Civil Serv. Comm., 275 Neb. 722, 748 N.W.2d 660 (2008).
Both parties rely upon the following definition of insubordination articulated in Wadman v. City of Omaha, 231 Neb. 819, 828, 438 N.W.2d 749, 755 (1989): "[I]nsubordination is an employee's willful or intentional disregard of, or refusal to obey, an employer's reasonable order, rule, or regulation, which is expressed or implied and is given or promulgated under lawful authority related to the employment."
Section 17-208(2) directs a village board considering an appeal by a police officer from a removal to determine whether the "challenged removal ... was necessary for the proper management and the effective operation of the police department in the performance of its duties under the statutes of the State of Nebraska."
McKee does not dispute that the chairperson of the village board or the board of trustees are empowered to exercise lawful authority over the chief of police. Rather, he argues that the board's August 29, 2006, action stating that a "resignation would be accepted up to 10 working days prior to September 27" somehow precluded the board from earlier demanding an assurance from McKee that he would comply with the August 29 action rescinding his scheduled vacation. We disagree.
On August 29, 2005, the board took formal action denying McKee the previously scheduled vacation. It also took action requiring that he "show up," i.e., perform his duties, for the required service. On September 5, the board ordered McKee to answer whether he would obey the board's earlier decision requiring him to "show up." We reject McKee's argument that he was "ambushed" by the question. Brief for appellant at 8. Certainly, the meeting's agenda, amplified by Sheldon's *863 specific verbal notice, gave McKee reason to anticipate the board's order.
An employee's intention to perform his or her duties lies at the heart of the employer-employee relationship. On September 5, 2006, the village board simply ordered McKee to assure the board that he would obey the board's decisions. He did not. This constituted insubordination. McKee does not dispute that the August 29 actions were lawful. Clearly, the board had a responsibility to make suitable arrangements to protect public safety. Section 17-208(1) authorizes the village board to appoint a marshal. Under Neb.Rev. Stat. § 17-213 (Reissue 1997), the marshal is the chief of police and is responsible to make arrests for violations of state law or village ordinance. If the board was to timely make such arrangements, it needed a decision from McKee. His equivocation placed the board in the same position as would have an outright refusal. We find sufficient evidence to support the board's action upholding McKee's termination for insubordination.

CONCLUSION
The board provided McKee with pretermination due process consisting of oral notice of the charge against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Section 17-208 mandated review by the village board of McKee's removal and required the village to adopt rules and regulations governing the appeal. The ordinance, § 3-703, implemented the statutory requirements and governed the formal act of termination and the posttermination appeal proceeding. The formal notice of termination complied with § 3-703. The record contains sufficient evidence to support the board's decision to terminate McKee's employment for insubordination, which took the form of McKee's refusal to assure the board that he would obey the board's actions denying his vacation and requiring him to perform the duties of his office. We affirm the judgment of the district court.
AFFIRMED.