IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WHEELER V. COUNTY OF SARPY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RICK WHEELER, APPELLANT,

V.

COUNTY OF SARPY AND THE SARPY COUNTY SHERIFF'S
OFFICE MERIT COMMISSION, APPELLEES.

Filed March 7, 2017.    No. A-16-038.

Appeal from the District Court for Sarpy County: J RUSSELL DERR, Judge. Affirmed.

Steven M. Delaney and A. Bree Robbins, of Reagan, Melton & Delaney, L.L.P., for appellant.

Vincent Valentino and Brandy Johnson for appellees.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Rick Wheeler appeals from the order of the district court for Sarpy County affirming the decision of the Sarpy County Sheriff's Office Merit Commission (the Commission) to uphold the termination of Wheeler's employment with the Sarpy County Sheriff's Office. Finding that sufficient, relevant evidence supports the Commission's decision, we affirm.

## BACKGROUND

Wheeler was a 25 year employee of the sheriff's office and employed as a deputy sheriff at the relevant time. On the evening of September 8, 2014, Wheeler, who was off duty, was at a sports bar drinking beer and watching football. He sat with an acquaintance at the bar. A woman,

- 1 -

G.I., later came into the bar and sat next to Wheeler's acquaintance. At one point in the evening, Wheeler got up, stood behind G.I.'s chair, and placed his hands on her shoulders. G.I. alleged that Wheeler then moved his hand down, reached around her side, and grabbed her breast. According to G.I., Wheeler then moved his hand down, slid it underneath her, and grabbed her buttocks with his finger near her vaginal area. The exact placement of Wheeler's hands on G.I. is unclear from surveillance video; however, the video supports some of G.I.'s claims and does not refute her other allegations. Wheeler claimed he had no independent recollection of G.I. that evening.

After G.I. reported the incident, the sheriff's office conducted an internal investigation and recommended termination of Wheeler's employment based on the inappropriate physical contact he made with G.I. The Sarpy County Sheriff issued a letter of termination on December 23, 2014, terminating Wheeler's employment as a result of his making inappropriate physical contact with G.I. in violation of the sheriff's office's standards of conduct, namely, "conduct unbecoming."

Wheeler filed a grievance of his termination, which the sheriff's office denied. He appealed the denial of his grievance and his termination to the Commission, and a hearing was held before the Commission. According to the evidence presented at the hearing, the Sheriff filed a formal complaint on September 15, 2014, which indicated that he was contacted by the county attorney who advised that a woman, G.I., reported to him that she had been sexually assaulted by a sheriff's deputy at a bar. The Sheriff therefore requested that an internal affairs investigation be conducted into the incident, and the Papillion Police Department investigated.

Kevin Griger of the sheriff's office observed an interview the Papillion Police Department conducted of G.I., and he also personally interviewed her. Griger testified that G.I. said she went into the bar around 11:30 p.m. to watch football and sat at the bar near Wheeler and his acquaintance. They generally made small talk with each other about football and food. According to G.I., at some point, Wheeler came up behind her, put his hands on her shoulders, and then moved his hand down to her side, reached around, grabbed her breast, then reached underneath her and grabbed her buttocks with his finger very near her vagina. G.I. indicated that she was upset and afraid that evening and later was afraid to report the incident to police. Based on G.I.'s statement and his observation of the video recording of the incident, Griger believed that Wheeler touched G.I.'s breast and thighs.

Several witness statements were received into evidence at the Commission hearing, including the statement from a friend of G.I. who indicated that the day following the incident he spoke to G.I. and she told him that an off duty sheriff's deputy had grabbed her breast, put his hand on her buttocks, and put his finger on her vagina. The friend indicated that G.I. was very upset and afraid to report the incident because she was afraid of retaliation from other officers. Another friend provided a statement reporting that the day following the incident, G.I. called her and told her about it, stating that the deputy had "approached her from behind, he then proceeded to rub her shoulders, sliding his hand around to caress her right breast, proceeding down to her buttock around to caress her vagina."

Lieutenant Chris Culler reviewed the reports, interviews, and witness statements and issued a findings report. He testified at the hearing that the video did not give a clear picture as to whether Wheeler actually grabbed G.I.'s breast, but based on her statements, he believed that Wheeler did so. Based on his review of the evidence and due to the seriousness of Wheeler's actions, he recommended termination of Wheeler's employment. Captain Greg London reviewed Culler's

report and agreed with his recommendation of termination. At the hearing, London testified that the video provides no clear evidence proving that Wheeler touched G.I's breast, but he believed her claims that it happened.

Wheeler testified on his own behalf at the hearing and stated that he did not have an independent recollection of portions of the evening in question. He did not recall seeing G.I. at the bar that evening. He also called an expert witness to testify on his behalf. The expert was a professor of construction engineering and management, occupational and environmental health science, and occupational health and safety. He described himself as an "ergonomist and human factors engineer" who often uses videotapes to record such things as human movements and postures. He offered his opinions as to the body language and angles of Wheeler and G.I. which can be seen in the video in order to attempt to establish whether Wheeler touched G.I. in the manner she claimed he did.

At the conclusion of the hearing, the Commission members voted unanimously to affirm the decision of the sheriff's office. A written order memorializing the decision was subsequently filed.

Wheeler filed a petition in error in the district court. The court received a transcript of the testimony and the 47 exhibits that had been offered at the Commission hearing. Following its review of written arguments, the court issued its order. In its order, the court found that based on the evidence presented, the Commission could reasonably find as it did, and thus, termination was not an arbitrary and capricious decision. It therefore affirmed the termination of Wheeler's employment. Wheeler appeals.

## ASSIGNMENTS OF ERROR

Wheeler assigns, consolidated and renumbered, that the district court erred in (1) upholding his termination because the evidence is insufficient to prove that his conduct was "conduct unbecoming" and the violation was so grave that his continued employment would affect the operational effectiveness of the sheriff's office, (2) upholding the decision of the Commission as the decision was arbitrary, capricious, not supported by the evidence, and contrary to agency rules, and (3) upholding his termination as he was terminated without just cause.

## STANDARD OF REVIEW

In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. *Pierce v. Douglas Cty. Civil Serv. Comm.*, 275 Neb. 722, 748 N.W.2d 660 (2008). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did based on the testimony and exhibits contained in the record before it. *Id*. In addition, the administrative action must not be arbitrary or capricious. *Id*. The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Id*.

ANALYSIS

Wheeler first argues that termination was inappropriate because the evidence is insufficient to support a conclusion that his actions meet the definition of "conduct unbecoming." We find no merit to this argument.

Pursuant to the sheriff's office's standard operating procedures (SOPs),

Employees shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Sheriff's Office. Conduct unbecoming of an employee shall include that which discredits or disgraces the Sheriff's Office or employee, or impairs the morale, efficiency, or operation of the Sheriff's Office.

Wheeler claims that in order for his behavior to satisfy the definition of conduct unbecoming, there must be some nexus between his conduct and his fitness to perform his duties as a law enforcement officer. He argues that without such evidence, his actions do not meet the definition of conduct unbecoming.

Although Wheeler repeatedly asserts that evidence was lacking to connect his actions with any purported impact on the sheriff's office, the SOPs' definition of conduct unbecoming also includes conduct which discredits or disgraces the *employee*. Wheeler's inappropriate touching of the breasts and/or buttocks of G.I., actions which were unwelcome by her, constitutes conduct which discredits or disgraces Wheeler himself. Thus, considering the Commission's finding that Wheeler did, in fact, make inappropriate physical contact with G.I., Wheeler's behavior satisfies the definition of conduct unbecoming, and we reject his argument to the contrary.

Wheeler also contends that his behavior did not meet the standard for termination as outlined in the SOPs. SOP G-2200 allows for discipline in the form of termination of employment when the violation was so grave that continued employment would affect the operational effectiveness of the sheriff's office. Wheeler argues that this SOP requires direct evidence that the operational effectiveness of the sheriff's office would be affected by the employee's continued employment. We disagree that direct evidence is required; rather, even if this SOP creates an additional burden of proof, the nature of Wheeler's actions were sufficient to conclude that his continued employment would affect the operational effectiveness of the sheriff's office.

In *Ostwald v. City of Omaha,* 224 Neb. 530, 399 N.W.2d 783 (1987), a 911 operator was discharged as a result of a telephone conversation held between him and his wife (also a 911 operator) concerning the purchase and use of marijuana for their personal consumption. Although the call was initiated by his wife using a telephone that was part of the 911 system, the Supreme Court focused on the criminal act and not the fact that city equipment was being used. The court reasoned

We believe that it is clear that when an employee of the city, whose duties in part are to help apprehend persons using marijuana, himself engages in such activity, such action does constitute an act unbecoming an incumbent of the particular position, does affect the efficient conduct of the business of the city, and is not in the best interest of the city government.

*Id.* at 532, 399 N.W.2d at 784.

Given Wheeler's duties as a law enforcement officer, his unwelcomed touching of G.I. does affect the efficient conduct of the sheriff's office. But we do not interpret SOP G-2200 as creating an additional burden of proof. Rather, when read in its entirety, SOP G-2200 sets a guideline for situations where termination is appropriate.

SOP G-2200 recognizes that every effort will be made to impose progressive discipline, but this effort "must be balanced with the need to not diminish the seriousness of the violation." It further provides that termination shall be used when the gravity of the violation dictates more severe discipline. According to G-2200, disciplinary action may be recommended by any supervisor, but such action shall be taken only by the Sheriff, and the Sheriff shall have final disciplinary authority. In Culler's report, he recommended that Wheeler's employment be terminated, because any less discipline would diminish the seriousness of the events surrounding Wheeler's actions. Although we agree with Wheeler's contention that no direct evidence was presented that the violation was so grave that his continued employment would affect the operational effectiveness of the sheriff's office, we find that such specific evidence was not necessary because there was evidence in the record to support a finding that the nature of the violation required severe discipline in the form of termination.

Wheeler also asserts that there was no connection between his actions and the operations of the sheriff's office because the incident occurred while he was off duty and his actions had no effect on the sheriff's office or the manner in which it conducts business. We do not agree.

The Nebraska Supreme Court has previously upheld termination of law enforcement officers based upon off-duty incidents, concluding that such inappropriate conduct had an impact on their governmental employment. In addition to *Ostwald v. City of Omaha, supra*, which involved off-duty conduct, the Nebraska Supreme Court has also upheld termination for off-duty conduct in *Lewis v. City of Omaha*, 153 Neb. 11, 43 N.W.2d 419 (1950). In *Lewis*, a firefighter challenged his discharge from employment which occurred after he initiated a physical altercation with police officers at his home while he was not on duty. On appeal, he argued that his conduct while off duty was of no concern to the city and that authority was lacking to suspend or discharge a firefighter for off duty conduct. The Supreme Court disagreed, finding that under the statutory authority for removing a firefighter, a city was authorized to inquire into the private character of its fire department to determine whether they meet the standards required by the city at any and all times. The court further held that a city is not required to keep persons in its employ whose conduct is embarrassing or inimical to the interests of the city.

More recently, in *Hauser v. Nebraska Police Standards Advisory Council*, 269 Neb. 541, 694 N.W.2d 171 (2005), the Supreme Court upheld the revocation of the law enforcement certificate of a state trooper. The revocation was the result of repeated incidents of domestic violence against the trooper's former wife. The Supreme Court observed that the State Patrol's code of ethics prescribed that employees were to conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably upon the Nebraska State Patrol, and conduct unbecoming included that which brings the State Patrol into disrepute or reflects discredit upon the employee as a member of the Nebraska State Patrol. The Supreme Court concluded that the officer's abuse of his former spouse showed clearly and convincingly that he neglected his duties such that revocation of his law enforcement certificate was justified.

Here, the Sarpy County Sheriff's Office SOPs provide that standards of conduct for its officers are essential to maintaining a functioning and properly disciplined organization and to maintaining the public trust. This is true because officers are highly visible representatives of Sarpy County and are entrusted with the responsibility of ensuring the safety and well-being of the community. Thus, the SOPs require that employees conduct themselves with the highest level of moral character *both on and off duty* and in a manner that does not bring discredit upon themselves, the sheriff's office, or the county. Accordingly, the SOPs also govern Wheeler's off-duty conduct and require that he act with integrity and high moral character.

*Ostwald* and *Lewis* dictate that law enforcement officers may be disciplined up to and including termination from their positions for singular, off duty incidents. As discussed in the cases above and provided for in the Sarpy County Sheriff's Office SOPs, officers are held to certain standards of conduct and their actions, whether on or off duty, reflect the authoritative positions in which they have been entrusted and reflect on the officer's governmental employer. Thus, inappropriate conduct by an officer also affects the employer and is not in the best interest of the government. And as the Supreme Court held, the government is not required to retain the employment of an officer whose conduct is embarrassing or unfavorable to the interests of the employer. See *Lewis v. City of Omaha*, *supra*.

Based on the foregoing, and the fact that the Commission found the evidence credible to support a finding that Wheeler made inappropriate physical contact with G.I., we find that the standard for termination is satisfied. The inappropriate touching of a citizen by an off-duty officer not only discredits and disgraces the officer himself, but it does not comport with the standards of conduct set forth by the sheriff's office and runs contrary to the officer's duty of ensuring the safety and well-being of the community. We recognize Wheeler's long, positive employment history with the Sarpy County Sheriff's Office. But Wheeler's actions affect the public's perception of and trust in the sheriff's office, sentiments that will impact the sheriff's office's ability to do its job. Additionally, under our standard of review, our duty is not to determine the level of discipline we would have imposed, but rather, to examine whether there is sufficient, relevant evidence to support the decision to terminate Wheeler's employment. Finding the evidence sufficient, we conclude this assignment of error lacks merit.

Wheeler next argues that the district court erred in upholding the decision of the Commission because the decision was arbitrary, capricious, not supported by the evidence, and contrary to agency rules. Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion. See *Fleming v. Civil Serv. Comm. of Douglas Cty.*, 280 Neb. 1014, 792 N.W.2d 871 (2011). As to the occurrence of the underlying incident, the evidence presented to the Commission as further detailed below included the narrative incident report from the Papillion Police Department which initially investigated the incident, G.I.'s statements and statements from other witnesses, various reports from the sheriff's office, and a copy of the video. The video does not refute G.I.'s accusations and Wheeler had no independent recollection of G.I.'s presence at the bar. We therefore conclude that the Commission could reasonably find the facts as it did. Having determined that the evidence presented to the Commission supports the Commission's decision, we cannot find that the decision was arbitrary, capricious, or not supported by the evidence. Wheeler argues that the evidence shows he did not touch G.I.'s breast and there

was no evidence he touched her vagina. However, the Commission found the evidence sufficient to conclude that Wheeler engaged in inappropriate physical contact with G.I., and on appeal, we are restricted to the record before the Commission and do not reweigh evidence or make independent findings of fact. Thus, we accept the Commission's factual finding as true.

In this context, Wheeler also contends that the sheriff's office should have implemented progressive discipline and argues there was no evidence proving that termination was the appropriate level of discipline. The SOPs provide for increasing levels of disciplinary action but state that the lowest level of discipline is not required upon the first violation involving an employee. Rather, discipline recommendations are to be based on the nature of the violation and seriousness of the offense. Thus, Wheeler's termination was not inconsistent with the principles of progressive discipline because there is no requirement that the punishment begin at a lower level when the nature of the offense alone justifies termination.

The initial report authored by Lieutenant Chris Culler outlined G.I.'s complaints that Wheeler grabbed her breast and buttocks while she was seated at the bar, and Culler described the actions that can be seen on the video. Although the video is unclear in several respects, Culler concluded, "Based on what I observed in the video, I have no reason to doubt [G.I.'s] statement." In other words, although the video because of its clarity and positioning of the cameras does not show all of Wheeler's actions in order to substantiate G.I.'s claims, the video does not contradict her allegations.

Culler also opined that Wheeler's actions had a serious and negative reflection on himself and those he represents as a sworn deputy of the sheriff's office. Culler recognized Wheeler's long outstanding service to the sheriff's office but concluded that Wheeler's actions must be dealt with in keeping the integrity of the office, and with regret, he recommended that Wheeler's employment be terminated because any less discipline would diminish the seriousness of Wheeler's actions. Captain Greg London reviewed Culler's report and concluded that there was no clear video evidence that Wheeler touched the victim's breast, but it appeared that Wheeler touched the victim's buttocks without consent. London opined that there were grounds for termination based on Wheeler's conduct that evening, because he clearly disgraced himself and the sheriff's office.

At the Commission hearing, the chief deputy of the sheriff's office at the time testified that he agreed with the recommendation of termination because Wheeler's actions were very detrimental to the public image of the sheriff's office and there were no other feasible alternatives. In addition, the record indicates that this level of discipline has been applied consistently to other officers. Since 1984, eight officers who were involved in improper sexual misconduct were terminated or resigned in lieu of termination.

Again, since the evidence was sufficient as a matter of law because the Commission could reasonably find the facts as it did based upon the testimony and exhibits, we consider instead whether termination was the appropriate form of discipline based on the Commission's factual finding that Wheeler subjected G.I. to inappropriate touching. We conclude that termination is supported by sufficient relevant evidence.

Finally, Wheeler asserts that there was no "just cause" for his termination. We disagree.

The agreement between the County of Sarpy, Sarpy County Sheriff, and the Fraternal Order of Police, Sarpy Lodge No. 3 provides that disciplinary action by the Sheriff shall be imposed for just cause only. The agreement does not define "just cause;" however, the SOPs mandate that

employees who violate any policy, procedure, or order, including the sheriff's office's core values, shall be subject to disciplinary action. The definition of conduct unbecoming recited above is included in the sheriff's office's core values. Thus, because employees are to be disciplined for violations of the core values, it stands to reason that a violation of the core values would constitute "just cause" for disciplinary action. And because we found the evidence sufficient to prove that Wheeler's actions meet the standard of conduct unbecoming, we conclude that just cause existed to terminate his employment.

## CONCLUSION

We conclude that there was sufficient relevant evidence to support the district court's decision to affirm the termination of Wheeler's employment. We therefore affirm.

AFFIRMED.