TERRY HICKEY AND THE FRATERNAL ORDER OF POLICE, LODGE ·
NO. 52, APPELLANTS, v. CIVIL SERVICE COMMISSION OF
DOUGLAS COUNTY, NEBRASKA, AND DOUGLAS
COUNTY, NEBRASKA, APPELLEES.

741 N.W.2d 649

Filed November 30, 2007.    No. S-06-802.

John E. Corrigan, of Dowd, Howard & Corrigan, L.L.C., for appellants.

Stuart J. Dornan, Douglas County Attorney, Peter J. Garofalo, and Bernard J. Monbouquette, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This case presents a petition in error from the decision of the Douglas County Civil Service Commission (the Commission) to approve the termination of Terry Hickey's employment with Douglas County. This decision was as a consequence of a sick leave violation and other rule violations from the preceding 12 months. Hickey's primary argument is that his termination of employment was based on a sick leave violation that was not listed in the predisciplinary hearing notice and that, therefore, such termination violated his right to due process of law.[1] Hickey also argues that the termination of his employment was disproportionate to the violation.

## BACKGROUND

Hickey had been an employee of Douglas County for nearly 16 years. He had been working for approximately 5 years as a security officer at the Douglas County Health Center (the Health Center) before being discharged. On November 1, 2004, Hickey received a 3-day suspension for attempting to place handcuffs on a female employee at the Health Center and for

---

[1] See *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

pulling the hair on the back of her neck. On May 12, 2005, Hickey received a 3-day unpaid suspension and was required to attend sexual harassment training after it was found that he had been verbally inappropriate and used profanity with a female employee of another Douglas County department.

On May 19, 2005, Hickey suffered a fracture to his hand while repairing a truck in his driveway. There is no evidence that this injury occurred while working at outside employment. Because Hickey's security job presented a "potential combative situation," his physician recommended that Hickey not return to his job as a security officer for 4 weeks. Healing went more slowly than expected, and Hickey was not released to work until July 22. From May 19 to July 22, Hickey took paid sick leave from Douglas County.

Besides the "potential risk environment" of his security job, Hickey's physician advised Hickey that he could use his hand within the cast as he was able. Hickey had his own lawn care and snow removal business, and during the time he was on sick leave, he continued to work, mowing and treating lawns for his business.

The Commission's personnel policy manual provides for paid sick leave under article 21, section 2. Section 2(a) states in part, "Employees are prohibited from working in any other employment while utilizing sick leave with pay. Violation of these provisions may result in disciplinary action." Section 2(b), entitled "Definition of Sick Leave," lists reasons for absence that qualify as sick leave. The first of the reasons listed, section 2(b)(1), is "[a]bsence necessitated because of bona fide illness or injury," with the caveat that "employees who become injured as a result of engaging in secondary employment outside of the County service shall not be entitled to sick leave with pay for such injury."

James C. Tourville, the director of the Health Center, sent Hickey a notice of a predisciplinary hearing. The notice listed the Commission rules under which the charges against Hickey had been brought. That list included article 13, section 5(a)(9), misuse of sick leave, and article 21, section 2(a), sick leave. The notice did not specifically list article 21, section 2(b). The notice also listed the November 1, 2004, and May 12, 2005,

disciplinary actions and advised that the current action could constitute multiple instances of disciplinary action within a 12-month period. Under the "Notice of Pending Charges and Explanation of Evidence" portion, it stated in full:

May 19, 2005

It was brought to Management's attention that you had injured your right hand while off duty.

You informed Management later this same day that your right hand had been fractured and you would need to be off work on medical leave for three (3) weeks.

June 21[,] 2005

It was brought to Management's attention that you were seen unhitching your equipment trailer from your dump truck and that you were working on your second job.

July 12-13, 2005

You were observed using your right hand, without a cast, performing duties associated with your second job. These duties included you turning a valve and cranking the hitch on your trailer with your right hand.

You were also observed using your right hand to support your weight, to pull yourself up on your tractor, and driving the tractor while spraying chemical on a field in Gretna[, Nebraska].

This work was being performed while you were on Sick Leave from Douglas County due to an injury to your right hand.

Your absence from work on Sick Leave continued through July 21, 2005.

Hickey's employment was terminated after the disciplinary hearing. We do not have a record of that proceeding. The notice of disciplinary action sent on July 29, 2005, informed Hickey of his termination of employment. The notice, citing article 21, section 2(a), repeated the explanation of the evidence quoted above and summarized that during the disciplinary hearing, Hickey was told he had been working at his second job while on paid sick leave.

Hickey appealed to the Commission, which held a hearing on October 13, 2005. In opening statements to the Commission, Hickey's counsel stated that to his knowledge, the only reason

Hickey's employment was terminated was because he was alleged to have been engaged in off-duty employment while on sick leave and that termination was excessive. Hickey's counsel argued that Hickey was unaware of the rule against working while on paid sick leave; Hickey's supervisor knew Hickey had a second job, and Hickey's supervisor never advised Hickey of this rule or asked him to stop working during sick leave. The county attorney, in his opening remarks, responded: "And the evidence will show that . . . Hickey not only ignored certain work rules prohibiting the engagement in secondary employment while being on sick leave. The work rules would state that one is disqualified from receiving sick leave benefits when one becomes injured in another line of work." It is undisputed that this was the first time it had ever been suggested that Hickey had violated section 2(b), as opposed to 2(a).

Hickey called Tourville as his first witness. Tourville testified that he was not Hickey's immediate supervisor but that, as director of the Health Center, it was ultimately his decision to terminate Hickey's employment. Hickey's counsel handed Tourville a copy of the notice of disciplinary action Tourville had sent to Hickey, and the following colloquy took place:

[Hickey's counsel:] Now, is it your understanding of the facts of this case that . . . Hickey was injured while he was engaging in employment outside of the . . . Health Center?

[Tourville:] That's correct.

Q. Who told you that?

A. I don't recall who told me, but I had — I had learned that he — was informed that he had injured himself outside of employment.

. . . .

Q. . . . I'll show you page 21-2 of Exhibit 2 which is part of the personnel manual . . . Do you see where —

. . . .

Q. — it directs that a person is not eligible for sick leave if they're [sic] injured in employment outside of their [sic] employment with the County?

A. Yes, I do.

Q. Was that one of the reasons that you disciplined — you decided to terminate this man?

A. That was the reason he couldn't use sick leave while he was injured outside his — outside of the County employment, yes.

Q. Okay. Well —

A. Yes.

Q. Well, look at [the notice of disciplinary action]. And you show me where you mentioned to him anywhere in there that he violated that work rule.

A. It would be Section — Article 21, Section 2, sick leave, on page two of the letter.

Q. And Section 2(a), sick leave — if I can see this.

A. Uh-huh, sure. It would be on the page before. It starts on the page before that.

Q. Oh, so it wasn't this provision. It was some other provision; right?

A. It's part of that same provision.

Q. Oh, because this is under Section 2(b), isn't it?

A. (No audible response.)

Q. Let's take a look at the whole manual. If you look at Section 2(a), that provides that you can't receive sick leave if you're working off duty; right?

. . . .

Q. . . . So . . . under Section A, were employees advised — that employees are prohibited from working in any — any other employment while utilizing sick leave pay; right?

A. That's correct.

Q. And that's why — that's why you terminated this man; correct?

A. That would be correct.

Q. Okay. So the fact that he was receiving sick leave while he was — because you think he was injured in his employment outside of the County, that didn't have anything to do with it, did it?

A. Rephrase your question.

Q. You see at page 21-2 under Section (b)(1) of this particular article where . . . .

. . . .

Q. . . . . [E]mployees who become injured as a result of engaging in secondary employment outside of the County service shall not be entitled to sick leave with pay for such injuries.

. . . .

Q. Now, does that — are you telling me that that had something to do with your decision to discipline this guy?

A. I relied on Article 21 under "discipline" that states that he could not be paid sick leave when he was — when he injured himself on another job outside the County employment.

Q. Did you ever tell him that?

. . . . .

A. He had all this at the time of the hearing.

Q. So you are telling us now that you told him that he shouldn't have been on sick leave because he got injured while he was off duty and working in some other employment?

A. That was cited on the letter that we sent to him —

Q. Where?

. . . . .

A. What I cited was Article 21, Section 2(a), sick leave.

Q. Okay. And this is Article 21, Section 2(b), isn't it?

A. I cited 2(a).

Q. Okay. So you never told him that you thought he violated Section 2(b)?

A. No, I cited 2(a).

Q. So you would agree that my question — that this statement is correct: That you never told him that you thought he violated Section 2(b) or Article 21?

A. No, I told him 2(a), Section 2(a).

During cross-examination, the county attorney confirmed that Tourville, as the department head, relied on direct supervisors to report on employee infractions. He then reviewed with Tourville the notice of predisciplinary hearing that Tourville sent to Hickey and had Tourville read article 21, section 2(a), "[e]mployees are prohibited from working at any other employment while

utilizing sick leave with pay." Tourville then agreed that it was "fair to say" that "the discipline imposed on July 29, 2005, against . . . Hickey rested on his actions as set forth in the notice of disciplinary action under those particular provisions." Tourville further testified that the discipline rested on the accumulation of violations within a 12-month period.

After Tourville's testimony, Hickey made a motion to dismiss based on Tourville's testimony that the reason he terminated Hickey's employment was his belief that Hickey had been injured in other employment. Hickey argued that it was a clear violation of Hickey's due process rights to have never been advised in the notice of predisciplinary hearing that he had violated article 21, section 2(b). The county attorney responded that Hickey had purposefully called Tourville first in order to confuse him as to what grounds Hickey's discipline was based upon. According to the county attorney, Tourville had clarified on cross-examination that the basis for the sick leave violation was section 2(a) and not section 2(b) and that section 2(a) was listed in Hickey's notice of predisciplinary hearing, as well as his postdisciplinary notice.

The motion to dismiss was denied, and the hearing proceeded with the testimony of Chuck Franek. Franek is the head of security at the Health Center and was Hickey's supervisor. Franek testified that he never inquired about whether Hickey was working a second job when he was injured and that he never had any knowledge that Hickey's injury was incurred in secondary employment. Franek explained that the prohibition against taking sick pay when the absence is due to an on-the-job injury from outside employment had "nothing to do with" Hickey's violation. Instead, Franek explained the violation in question involved working in secondary employment while receiving paid sick leave, a violation under section 2(a).

Photographic evidence was introduced at the hearing showing that Hickey continued to work, maintaining lawns for his lawn care business on dates for which he was receiving paid sick leave. There was no evidence that the hand injury leading to the sick leave was connected with outside employment.

The Commission upheld the Health Center's decision to terminate Hickey's employment, and Hickey filed a petition in

error in the district court. The district court affirmed Hickey's termination of employment. Hickey appeals.

## ASSIGNMENTS OF ERROR

Hickey assigns that the district court erred in (1) holding that Hickey received adequate due process at his pretermination and posttermination of employment hearings and (2) upholding the decision of the Commission denying Hickey's appeal of his termination of employment.

## STANDARD OF REVIEW

■ In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision of the administrative agency to determine whether the agency acted within its jurisdiction and whether the decision of the agency is supported by sufficient relevant evidence.[2]

■ The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.[3] On a question of law, an appellate court is obligated to reach a conclusion independent of the court below.[4]

## ANALYSIS

Hickey first contends that the district court should have reversed his termination of employment because testimony by Tourville at the Commission hearing shows that such termination was based, in whole or in part, on an alleged violation of section 2(b), prohibiting taking paid sick leave when the leave was necessitated by injury incurred in secondary employment. Hickey asserts that because he was not informed of this alleged ground for his discipline, he was not afforded a meaningful opportunity to respond to the allegation, and that his due process rights were violated.

---

[2] See, *Maxon v. City of Grand Island*, 273 Neb. 647, 731 N.W.2d 882 (2007); *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992).

[3] *Barnett v. City of Scottsbluff*, 268 Neb. 555, 684 N.W.2d 553 (2004); *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991).

[4] See *Barnett v. City of Scottsbluff, supra* note 3.

■ The parties do not dispute that Hickey had a protected property interest in his continued employment. In *Cleveland Board of Education v. Loudermill*,[5] the U.S. Supreme Court held that when a public employer deprives an employee of a property interest in continued employment, constitutional due process requires that the deprivation be preceded by (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to present his or her side of the story.[6] A pretermination of employment procedure functions as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."[7]

Hickey relies on *Martin v. Nebraska Dept. of Public Institutions*,[8] in which the Nebraska Court of Appeals reversed a termination of employment because of the failure to provide adequate due process. The employee's termination of employment in *Martin* was based in part on charges of insubordination. The employee was notified that he was alleged to have acted insubordinately prior to a pretermination of employment meeting with his employer. However, it was not until after this meeting that an investigation was conducted into the alleged insubordination, which included reviewing documents and interviewing the employees. The information gathered by the investigation was then relied upon by the employer when it decided to terminate his employment. The information from the investigation was not available to the employee until after such termination. The Court of Appeals concluded that the employee was denied due process because he never had an opportunity to rebut the evidence upon which his employment was terminated.

---

[5] *Cleveland Board of Education v. Loudermill, supra* note 1.

[6] See, *id.*; *Nebraska Pub. Emp. v. Otoe Cty.*, 257 Neb. 50, 595 N.W.2d 237 (1999); *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624 (1995).

[7] *Cleveland Board of Education v. Loudermill, supra* note 1, 470 U.S. at 545-46.

[8] *Martin v. Nebraska Dept. of Public Institutions*, 7 Neb. App. 585, 584 N.W.2d 485 (1998).

Hickey asserts that his termination of employment was similarly based on grounds of which he was unaware prior to the decision to make such termination. We disagree. The evidence is sufficient to show that Hickey's termination of employment was, in fact, based only on the grounds stated in the predisciplinary notice. Hickey makes no argument that if his employment was actually terminated for a section 2(a) violation, as opposed to a section 2(b) violation, he was denied due process, and we find no due process violation. Hickey was notified that he was subject to discipline for working in outside employment while receiving paid sick leave. He had a chance to respond to this charge at the disciplinary hearing.

It is true that Tourville testified that he terminated Hickey's employment for receiving paid leave when his injury was incurred during secondary employment, in violation of section 2(b). But Tourville also testified, during both direct and cross-examination, that he terminated Hickey's employment for violating the policy of working in secondary employment while receiving paid sick leave, a violation of section 2(a). Nothing in Tourville's testimony demonstrates a belief that Hickey's employment was terminated for both.

Tourville's testimony began with the statement that Hickey was injured outside of his employment with the county—not that he was injured during outside employment. He then said, in response to Hickey's leading questions, Hickey violated the rule that one cannot claim paid sick leave if one's injury was incurred in secondary employment, section 2(b). But later, without expressly acknowledging the inconsistency, Tourville also clearly stated that Hickey's employment was terminated for working in outside employment while receiving paid sick leave, a violation of section 2(a). As we read the record, under examination, Tourville was simply confused. Aside from those portions of Tourville's testimony discussed above, there is nothing in the record to indicate that Hickey's last violation was based on anything other than section 2(a): working in secondary employment while receiving paid sick leave. The notice of predisciplinary hearing cites section 2(a), and the evidence listed as supporting the violation consists of facts relating to Hickey's employment while on sick leave. The postdisciplinary notice of

termination of employment again recites section 2(a) and the evidence relating to Hickey's working in secondary employment while receiving paid sick leave. Franek testified before the Commission that section 2(b) had nothing to do with Hickey's termination of employment and that Hickey's violation instead involved section 2(a). The exhibits offered by the county at the hearing before the Commission were relevant only to Hickey's outside employment during paid sick leave. In short, the record clearly establishes, despite Tourville's confusion, that Hickey's employment was terminated for violating section 2(a) and that he had notice of and the opportunity to defend himself against that charge. We find no due process violation.

Hickey also asserts that regardless of whether he received due process, we should reverse, because the Commission's order was arbitrary and capricious and was unsupported by relevant evidence. On this point, Hickey argues that the suggested disciplinary guidelines of the policy manual set forth only an oral warning or official reprimand for a first offense of misuse of sick leave. In addition, Hickey claims he was unaware of the sick leave policy prohibiting outside employment while on sick leave with pay. Hickey points out that his supervisor, Franek, never asked Hickey if he was working while on sick leave, nor did Franek inform him of this prohibition. In sum, Hickey argues that Tourville was predisposed to terminate Hickey's employment and that such termination was disproportionate to the violation.

■ Evidence supports an administrative agency's decision reviewed in an error proceeding if the agency could reasonably find the facts for the agency's decision on the basis of the relevant evidence contained in the record before the agency.[9] "Arbitrary and capricious" action by an administrative agency is action taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.[10]

There is no dispute that Hickey violated article 21, section 2(a), of the policy manual. Nor does Hickey dispute that he

---

[9] *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991).

[10] *Id.*

signed an acknowledgment of receipt of the policy manual and that he was responsible for following the rules of the manual. Hickey ignores the fact that the reason for his discharge was not just the singular sick leave violation, but that this was his third policy violation in the past 12 months.

The policy manual sets forth discharge as a reasonable consequence of a third violation of either of the rules the county found Hickey had violated on November 1, 2004, and May 12, 2005. The policy manual also recommends discharge as an acceptable consequence of a third violation of sick leave policies. The policy manual explains that although the range of reasonable penalties for various offenses refers only to successive instances of the same offense, single violations of different work rules may also occur. In that case, "the Elected Official/Department Head may wish to take action other than that delineated for the first offense under each violation." Hickey committed such violations, and the recommended discipline is within the range recommended by the county's disciplinary guidelines. As such, we conclude that Tourville's decision to discharge Hickey from his employment was supported by sufficient relevant evidence and was not arbitrary, capricious, or unreasonable.

## CONCLUSION

We affirm the decision of the district court which affirmed the Commission's decision to uphold Hickey's discharge from employment.

AFFIRMED.