17 Neb. App. 458
CHRISTOPHER D. PARENT, APPELLEE AND CROSS-APPELLANT,
v.
CITY OF BELLEVUE CIVIL SERVICE COMMISSION, APPELLEE, AND THE CITY OF BELLEVUE, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE.
No. A-08-630.
Court of Appeals of Nebraska.
Filed March 17, 2009.
Patrick J. Sullivan and Michael F. Polk, of Adams & Sullivan, P.C., for appellant.
John C. Hewitt, Steven M. Delaney, and Pamela Epp Olsen, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Christopher D. Parent.
CARLSON, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
This appeal, which has a complex procedural history, described below, follows the district court's review of an administrative proceeding addressing the firing of a police officer for alleged violation of a policy concerning physical ability. The court characterized as jurisdictional a time limitation specified by a collective bargaining agreement, and remanded the matter for further findings. Because case law demonstrates that such time limitations are not jurisdictional, we reverse. Reaching the merits, we conclude that under the specific policy utilized to justify the officer's firing, he satisfied the only objective standard imposed by the policy. Therefore, the decision of the administrative agency upholding the termination of employment must also be reversed.

BACKGROUND
The City of Bellevue, Nebraska (the City), employed Christopher D. Parent as a police officer. On August 31, 2007, police Lt. Mark Elbert filed an administrative report alleging that Parent had engaged in misconduct. The report alleged that Parent had violated specified portions of two separate employment policies of the Bellevue Police Department (Department): one concerning firearms proficiency and the other addressing physical, mental, and emotional health.
Because the City ultimately fired Parent for violating only the latter policy and because the wording of the policy is critical to the decision, we set forth the full content of the pertinent policy as follows:
Police Officers are called upon to perform a variety of tasks that require physical endurance and agility. This dictates that officers maintain a high level of physical, mental and emotional conditioning, which can only be acquired through regular exercise, proper diet and utilizing time.
All officers are required to maintain at least a "fair" level of physical wellness pursuant to the standards contained within the . . . Department's Wellness Program Manual.
Elbert's report stated that during firearm training which had occurred on August 28, 2007, Parent had "significant problems getting up from one knee throughout the course of fire." The report indicated that Parent subsequently performed better in firearm training on August 31, but still had problems getting up from the ground without using his gun hand. According to the record, Parent's excessive weight caused the difficulty with the firearms training.
On August 31, 2007, Parent was notified of the alleged violations of policies and placed on administrative leave pending the outcome of an investigation. Later, Elbert investigated this matter. Elbert concluded his investigation on or about September 18. However, a police captain who was charged with reviewing the investigation instructed Elbert to obtain medical evaluations of Parent.
The applicable collective bargaining agreement required that the investigation be concluded and that disciplinary action be taken within 30 days of the notification Parent received on August 31, 2007. The provision contains certain exceptions related to delays in obtaining necessary evidence. Elbert then requested and received an extension of the deadline to acquire medical reports. The record contains a memorandum recording the extension, which memorandum appears to be initialed by Parent and indicates that a copy of the memorandum was provided to an officer of the police union.
On November 9, 2007, after Elbert had concluded his investigation, the police captain who reviewed the investigation recommended that Parent's employment be terminated, in part due to the results of four medical evaluations. On November 13, the Bellevue chief of police also recommended that Parent's employment be terminated. The city administrator reviewed the police chief's recommendations and, after a pretermination hearing, adopted them and terminated Parent's employment as of November 28. Parent's employment was terminated on the ground that he had violated the physical, mental, and emotional health policy.
Parent then requested a hearing before the City of Bellevue Civil Service Commission (the Commission). After a hearing, the Commission concluded that Parent had violated the first paragraph of the Department's physical, mental, and emotional health policy and stated that Parent "does not have a level of physical conditioning to safely perform the duties of a police officer." The Commission also found that Parent's termination of employment was "undertaken in good faith for cause." The Commission affirmed the City's decision and additionally stated that Parent's termination of employment was justified pursuant to Neb. Rev. Stat. § 19-1832(3) and (6) (Reissue 2007). With respect to these sections, the Commission found Parent to be respectively "physically unfit for the position he holds" and "unfit for his position."
Parent appealed the Commission's decision to the district court. The court did not consider the merits of the appeal but instead "remanded [the case] to the . . . Commission to determine whether the City complied with the requirements of the [applicable] collective bargaining agreement, so as to vest the Commission with proper jurisdiction over the termination hearing." The court relied upon a provision in the City's collective bargaining agreement with the police union, which agreement stated in pertinent part:
The City shall begin investigation of any cause that might lead to disciplinary action upon notification of such cause. Disciplinary action shall be taken within thirty (30) days of such notification. This thirty (30) day period may be extended if the City finds it necessary to interview any person that is not a member of the Department, or if a Department member is not available due to leave, sickness, or training. If the Department finds it necessary to extend the investigation beyond the thirty (30) day period, the employee under investigation will be notified in writing of the extension. The [Bellevue Police Officers] Association President will also be notified in writing if the extension involves circumstances beyond the control of the Department.
The court reasoned that "disciplinary action was not taken against Parent within thirty (30) days of his notification," that the "unilateral" extension of the time "was not pursuant to one of the delineated reasons," and that no written notice of an extension of time was provided to Parent or the "Association President."
The City timely appeals from the decision of the district court. Parent timely cross-appeals.

ASSIGNMENTS OF ERROR
On appeal, the City made three assignments of error, which we consolidate and restate into two issues. First, the City alleges that the district court erred in reversing the decision of the Commission and remanding the matter to the Commission for a factual determination. Second, the City asserts the court erred in failing to find that the preponderance of the evidence supported the termination and that the termination was made in good faith for cause.
On cross-appeal, Parent makes four assignments of error regarding substantive matters which the district court did not reach because it decided the case on jurisdictional grounds. Parent assigns that the district court erred in (1) failing to find that the Commission's decision was not supported by sufficient relevant evidence; (2) failing to find that the Commission's decision was arbitrary, capricious, and not made in good faith for cause; (3) failing to find that the Commission violated due process in receiving a number of exhibits into evidence; and (4) failing to find that the Commission violated due process by relying on § 19-1832 as grounds for termination, where the notice Parent received alleged violations of the firearms policy and physical, mental, and emotional health policy.

STANDARD OF REVIEW
[1-3] In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. Pierce v. Douglas Cty. Civil Serv. Comm., 275 Neb. 722, 748 N.W.2d 660 (2008). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did based on the testimony and exhibits contained in the record before it. Id. In addition, the administrative action must not be arbitrary or capricious. Id. The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. Id.
[4, 5] We determine jurisdictional issues that do not involve factual disputes as a matter of law. Id. On a question of law, we reach a conclusion independent of the court below. Id.

ANALYSIS

Jurisdiction.
We find no support for the district court's disposition of the case on jurisdictional grounds. In the court's order, it provided no authority to support its conclusion that a failure to comply with the time limitation of the collective bargaining agreement creates a jurisdictional defect. The parties have not cited any authority which suggests that the identified defect is jurisdictional. Further, we can find no authority in Nebraska law which indicates that this or any other circumstance apparent in the instant case creates a jurisdictional defect. Because the record demonstrates that Parent exhausted the available administrative remedies before appealing to the district court, the doctrine of exhaustion of remedies, see Vaccaro v. City of Omaha, 6 Neb. App. 410, 573 N.W.2d 798 (1998), did not prevent the district court from obtaining jurisdiction.
The City's alleged breach of the collective bargaining agreement did not create a jurisdictional defect. Other jurisdictions have held that a delay in disciplinary proceedings beyond the time period appointed in an employment contract does not, in itself, invalidate the disciplinary proceeding. See, Atlantic Coast Line R. Co. v. Brotherhood of Ry., Etc., 210 F.2d 812 (4th Cir. 1954); Brotherhood of Sleeping Car Porters v. Pullman Co., 200 F.2d 160 (7th Cir. 1952). In Atlantic Coast Line R. Co., supra, the applicable contract provision required that an "investigation" be held within 10 days of the employee's discharge and that a decision be rendered within 10 days of the completion of the investigation. The contract provided no recourse for the employer's failure to comply. Even though the employer rendered a decision approximately 2 weeks late, the court found that noncompliance with the provision did not render the proceeding null and void. The court reasoned:
The purpose of the ten day provision is to expedite the proceedings for which the rule provides, not to serve as a limitation upon their being held; and the remedy for violation of that provision is damages for any delay that may have occurred, not reinstatement with an unassailable record or damages for an indeterminate period on the theory that the proceedings otherwise regularly held were a nullity.
Id. at 815. Thus, the results of a disciplinary proceeding are valid and appealable even if an employer does not strictly follow the timeline for discipline contained in the applicable contract.
The facts in the instant case are very similar to the facts of Atlantic Coast Line R. Co. In both the instant case and Atlantic Coast Line R. Co., the employment contract provided a timeline for an investigation but no explicit recourse for the employee in the case of a delay. In both, there was a temporary delay. We conclude that the City's failure to strictly adhere to the timing requirement set forth in the collective bargaining agreement did not constitute a jurisdictional defect. The district court erred in so holding.

Parent's Assignments of Error.
We next consider Parent's assignments of error. In the instant case, the same standard of review applies to both the district court and this court. Both courts review the Commission's decision to determine whether the Commission acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the Commission. An analogous relationship exists between this court and the Nebraska Supreme Court, which has held that when it reverses a Court of Appeals decision, it "may consider, as [the Supreme Court] deem[s] appropriate, some or all of the assignments of error the Court of Appeals did not reach." Wagner v. Wagner, 275 Neb. 693, 701, 749 N.W.2d 137, 143-44 (2008). Because the same standard of review applies, we deem it appropriate to consider the issues which the district court did not reach.
Parent first argues that his employment could be terminated only if he was found to be in violation of the Department's physical, mental, and emotional health policy, because that was the only charge of which he was notified. In response, the City has argued that § 19-1832(3) and (6), which the Commission cited in its opinion, contained adequate and independent grounds justifying the termination of Parent's employment and that Parent was provided with adequate notice of these grounds prior to the pretermination hearing.
We address the issue of notice and conclude that the only grounds for termination of which Parent received adequate notice were the grounds contained in the Department's physical, mental, and emotional health policy.
On August 31, 2007, at the inception of the investigation, Parent was notified in writing that the Department would investigate him for alleged violations of Department policy. Specifically, he received a document entitled "Alleged Violation Notification," in which he was notified that the alleged violations were "firearms proficiency" and "physical, mental, emotional health." The alleged violations corresponded directly to provisions with the same names contained in the Department's policy manual. After the Department had concluded its investigation and prior to the pretermination hearing, Parent received notice of the grounds for his recommended termination. At that time, Parent received a document entitled "Advisement of Adjudication," in which Parent was informed that the alleged "physical, mental, & emotional health 7/701/4" violation had been sustained pursuant to the investigation. Prior to the hearing, the Department also presented Parent with the evidence it intended to use in the pretermination hearing, which included evidence regarding Parent's level of physical fitness.
[6] The Nebraska Supreme Court has held that pursuant to Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985),
when a public employer deprives an employee of a property interest in continued employment, constitutional due process requires that the deprivation be preceded by (1) oral or written notice of the charges, (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to present his or her side of the story.
Hickey v. Civil Serv. Comm. of Douglas Cty., 274 Neb. 554, 563, 741 N.W.2d 649, 655 (2007). The parties do not dispute the fact that Parent had a protected property interest in his continued employment.
Because Parent was notified that he was investigated and that termination was recommended pursuant only to the alleged violation of the employment policy, we may not uphold the Commission's decision to affirm Parent's termination on any other grounds.
The City contends that Parent was notified of the grounds for termination contained in § 19-1832(3) (mental or physical unfitness) and (6) (other sufficient grounds). The City first argues that Parent was directly notified of these grounds but cannot point us to any document which supports this allegation. We find no such document in the record. Second, the City argues that the notice requirement was fulfilled when Parent received the Department's evidence that was used at the pretermination hearing. The City asserts that this provided notice because the evidence suggested that Parent was not physically fit to be a police officer pursuant to § 19-1832(3). However, under Hickey, supra, "evidence" does not constitute "notice of the charges." Both "notice of the charges" and "an explanation of the employer's evidence" are separate and distinct requirements. The plain meaning of the notice requirement in Hickey is that the employer must specify to the employee the grounds on which the employer seeks to terminate employment. To conclude otherwise would mean that the Commission could uphold the termination of Parent's employment on any ground suggested by the evidence provided to Parent before the pretermination hearing. This would place Parent in the awkward and unfair position of not being informed which grounds were at issue until after the Commission had decided his case.
Because Parent was notified that the ground for the termination of his employment was the physical, mental, and emotional health policy, we consider only whether the termination of his employment was appropriate on this ground and conclude that it was not.
Parent argues that he could not be fired for a violation of Department policy, because he fulfilled the only mandatory requirement, which was contained in the second paragraph of the policy. Parent further asserted that he could not be fired pursuant to the first paragraph of the policy, because it contained no mandatory provisions.
[7,8] We conclude that the policy contained only one mandatory requirement, which is enumerated in its second paragraph. In interpreting the policy adopted by the City, we apply the familiar rules of construction applicable to statutes and regulations. See McKenzie v. City of Omaha, 14 Neb. App. 398, 708 N.W.2d 286 (2006). Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Rohde v. City of Ogallala, 273 Neb. 689, 731 N.W.2d 898 (2007). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. Niemoller v. City of Papillion, 276 Neb. 40, 752 N.W.2d 132 (2008). Therefore, we construe both paragraphs of the physical, mental, and emotional health policy together.
[9] Both paragraphs pertain to the same subjectwellnessbut only the second paragraph requires specific action. The plain language of the second paragraph states that officers are "required" to maintain the specified level of fitness. In contrast, the first paragraph contains no such mandatory language. The first paragraph of the policy is merely directory because it does not require that the officer take any actions. Further, if we construed the first paragraph to contain a mandatory standard, it would require us to conclude that the policy contained two distinct mandatory standards regulating the exact same subject matter, one of which is more difficult to fulfill than the other. This makes no sense. In construing a statute, appellate courts presume that the lawmaker intended a sensible result instead of an absurd one. See Foster v. BryanLGH Med. Ctr. East, 272 Neb. 918, 725 N.W.2d 839 (2007). We therefore conclude that Parent was required to comply only with the mandatory provision contained in the second paragraph.
Parent adduced evidence that the Department had developed a detailed wellness standard pursuant to the second paragraph and that he had fulfilled the requirements of this standard. This standard required each officer to accumulate a number of points which were earned by completing physical activities. The record contains the official log of Parent's activities and makes it clear that Parent had complied with these requirements. Therefore, the City had no grounds to terminate Parent's employment pursuant to the physical, mental, and emotional health policy, because he fulfilled its only mandatory requirement.
If the City wished to terminate Parent's employment based upon the provisions of § 19-1832(3) or (6), due process required that he be notified of that charge. Having elected to base the City's employment action solely upon the physical, mental, and emotional health policy, the City cannot use the statutory provisions as an alternative ground for termination. While the City's physical, mental, and emotional health policy may have "set the bar too low," the City alone is responsible for the policy it adopted.
We decline to address the remainder of Parent's assigned errors, because their resolution is not necessary to our disposition of this case.

CONCLUSION
The district court erred in determining that the Department's failure to comply with disciplinary procedure deadlines in a collective bargaining agreement created a jurisdictional defect. On the merits of the appeal, we find that Parent fulfilled the only objective standard contained in the employment policy that he was alleged to have violated. We therefore remand the cause to the district court with directions to reverse the Commission's decision upholding the termination of Parent's employment.
REVERSED AND REMANDED WITH DIRECTIONS.