As stated above, delay, alone, is an insufficient reason to deny a motion for leave to amend a pleading. Since defendants failed to show they would be unduly prejudiced if the amendment were granted, the trial court abused its discretion in disallowing it.

Having found that the district court should have allowed the amendment in 2010, we need not address plaintiffs' remaining assignments of error.

## CONCLUSION

We find that the district court abused its discretion in denying plaintiffs' motion to amend the first amended complaint in 2010. Accordingly, we reverse, and remand for a new trial.

Reversed and remanded for a new trial.

Irwin, Judge, participating on briefs.

————————

Philip Shear, appellant, v. City of Wayne Civil Service Commission and the City of Wayne, Nebraska, a municipal corporation, appellees.

___ N.W.2d ___

Filed January 14, 2014.    No. A-12-830.

1. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.
2. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.
3. **Administrative Law: Appeal and Error.** In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency.
4. ____: ____. The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.
5. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did from the testimony and exhibits contained in the record before it.
6. **Public Officers and Employees: Termination of Employment: Due Process.** Under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct.

1487, 84 L. Ed. 2d 494 (1985), a public employee possesses certain due process rights when state law grants a property right to continued employment.

7. ____: ____: ____. When a state deprives a public employee of the right to continued employment, the deprivation must be preceded by notice and an opportunity for hearing appropriate to the nature of the case.

8. **Termination of Employment: Due Process.** Deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process.

9. ____: ____. An impartial decisionmaker is not required at the pretermination stage so long as the employee has access to posttermination proceedings before an impartial adjudicator.

Appeal from the District Court for Wayne County: Robert B. Ensz, Judge. Affirmed.

Steven M. Delaney and Richard Whitworth, of Reagan, Melton & Delaney, L.L.P., for appellant.

Jerry L. Pigsley and Karen A. Haase, of Harding & Schultz, P.C., L.L.O., for appellees.

Moore and Bishop, Judges.

Moore, Judge.

Following termination from his position as a lieutenant for the Wayne Police Department, Philip Shear filed a written demand for an investigation and public hearing with the City of Wayne Civil Service Commission (the Commission). After the Commission upheld the termination, Shear filed a petition in error in the district court for Wayne County. The district court also affirmed the Commission's decision to terminate Shear's employment. Shear now appeals to this court, asserting that his due process rights were violated in his pretermination hearing, that the Commission's decision was arbitrary and capricious, and that the Commission erred in allowing undisclosed testimony at the hearing. Finding no merit to these assignments of error, we affirm.

## FACTUAL BACKGROUND

The City of Wayne, Nebraska (the City), employed Shear as a lieutenant in the Wayne Police Department. As lieutenant, Shear acted in a supervisory capacity within the department. In a letter dated February 17, 2011, Lowell Johnson, in his

position as city administrator for the City, filed written accusations with the Commission, alleging Shear had engaged in misconduct. Specifically, Johnson alleged that Shear had committed the following acts:

1. Created and tolerated an environment within the Wayne Police Department in which employees were hostile to other staff members, to other members of law enforcement and to the community; he further failed to demand the unquestionable integrity, reliability, and honesty from Wayne Police Department employees that would be consistent with public expectations, undermining the efficiency, morale and good order of the Wayne Police Department.

2. Engaged in an extramarital affair with an employee he supervised in the Wayne Police Department.

3. Made sexual advances to employees in the Wayne Police Department he supervised.

4. Used his City-issued cell phone for excessive personal calls and texts, and failed to supervise the use of City-issued cell phones and computers for personal use by Wayne Police Department employees and non-employees.

5. Advised Wayne Police Department employees to not go to the Wayne Police Chief with any problems, concerns or questions.

6. Advised Wayne Police Department employees to not go to [Johnson] because [Johnson] is not [their] friend or friend of the Wayne Police Department and to be careful what [they] tell him.

In these allegations, Johnson claimed that Shear's conduct was cause for disciplinary action under two provisions of the Wayne city code:

1. Incompetency, inefficiency, or inattention to or dereliction of duty;

2. Dishonesty, prejudicial conduct, immoral conduct, insubordination, discourteous treatment of the public or a fellow employee, any act of omission or commission tending to injure the public service, any willful failure on the part of the employee to properly conduct himself, or

any willful violation of this chapter or the rules and regulations adopted pursuant to this chapter.

See Code of Ordinances for the City of Wayne, Nebraska, art. II, § 26-45(b) (2010). Johnson also stated in the letter that he was immediately suspending Shear with pay.

On March 7, 2011, Johnson sent Shear a 12-page letter explaining Johnson's decision to suspend Shear. Johnson included a number of exhibits to support this explanation. At the end of the letter, Johnson informed Shear of his right to schedule a meeting with Johnson, during which Shear could present his side of the story. Shear immediately objected to Johnson's decision to preside over this meeting, noting that he believed Johnson's participation violated his right to due process. Shear demanded that an independent administrator be appointed to review the allegations.

Despite receiving Shear's objections, Johnson presided over the meeting with Shear and his attorney on April 22, 2011. At the outset of this meeting, Shear objected on the record to Johnson's participation. Johnson again refused to recuse himself. Having noted his objection, Shear's attorney then proceeded to refute Johnson's allegations through oral argument, during which he denied each of the accusations. Other than Shear's offering of Johnson's March 7 letter, no other evidence was produced at this meeting.

In a letter dated April 28, 2011, Johnson terminated Shear from his position with the police department. In this letter, Johnson informed Shear of his right to demand an investigation and public hearing before the Commission. Shear exercised this right on May 6 by filing a written demand for investigation and hearing.

The Commission held a public hearing from October 31 through November 4, 2011. By stipulation of all parties involved, Shear's hearing was consolidated with that of the police chief, whose employment was also terminated by Johnson. After the City presented its consolidated case, both Shear and the police chief presented their own evidence. The resulting record in this case is extensive and includes a bill of exceptions of nearly 1,500 pages and 141 received exhibits. This court has conducted an extensive review of the record

and will summarize the evidence that relates to Shear's termination. In our summary, we discuss only the evidence relating to the allegations which the Commission ultimately found supported Shear's termination.

The majority of the evidence the City presented to the Commission involved Shear's interactions with Rena Alonso, a former dispatcher with the Wayne Police Department. Alonso's testimony was presented through a deposition of over 6 hours in length which was received in evidence. Alonso claimed that while she was employed with the police department, Shear attempted to initiate a sexual relationship with her. Alonso testified that although the relationship was never consummated by any sexual act, Shear kissed her twice, hugged her, and put his hands on her thighs in an intimate fashion. Alonso also testified that she exchanged numerous personal text messages and had many personal telephone calls with Shear. The City introduced usage records from Shear's cell phone issued by the City, which records showed numerous calls and text messages between Shear and Alonso. Several of these calls were nearly an hour in length.

Alonso highlighted one particular event during which Shear attempted to use his desire for a sexual relationship with Alonso to affect her employment with the department. While on duty as a dispatcher, Alonso was instructed to contact the Norfolk, Nebraska, police to dispatch an officer to obtain a blood sample from the driver of a vehicle after an injury accident. Ultimately, Alonso did not have the officer dispatched, but instead contacted a hospital to have the blood draw completed. This error negatively affected the outcome of the case against the driver.

After the department discovered this error, Shear informed Alonso that she would be reprimanded, which included a 2-day unpaid suspension. Alonso claimed that when she became upset about the 2-day suspension, Shear offered to recommend to the police chief that the suspension be reduced to 1 day without pay. However, she claimed that Shear then told her that she would personally "owe" him a day. Alonso also testified that Shear told her he would kiss her if she began to cry and that Shear did in fact hug her when she began to cry.

The City also adduced evidence relating to a division among the employees within the police department. During her testimony, Alonso testified that she was aware of an "in group" and an "out group" within the police department. Alonso claimed that Shear told her that she did not want to be in the "out group." Alonso stated that if there was something that did not meet police department approval, it would go "bye-bye." A Wayne police officer confirmed the existence of this division. He testified that he became a part of this outer group after he and a Wayne police sergeant decided not to sign a "lack of confidence" letter directed against Johnson in his position as city administrator. The City presented evidence to suggest that Shear did not intervene in this division, but, rather, participated in it.

In addition to division within the department, the City focused on the department practice to refer to white persons as "number ones" and to black persons as "number twos." During his testimony, a former Wayne police officer admitted that this system existed, but stated that it was taken out of context. He maintained that this was a communication system to ensure officer safety and was not a discriminatory practice. The City claimed that as a supervisor, Shear should have corrected this practice, but did not.

Shear presented extensive evidence to attempt to contradict the City's case. As the City did during its case, Shear also focused on Alonso. He introduced the severance and settlement agreement Alonso signed with the City in an attempt to show her bias. Additionally, a number of police department employees and former employees testified on his behalf that Alonso was often the person making sexual comments and further testified that they did not witness any inappropriate conduct by Shear directed toward Alonso. Shear also introduced messages that he sent to Alonso which he claimed demonstrated his rejection of her sexual advances. During his testimony, Shear was adamant that he had a "personal relationship" with all employees in the police department and that his relationship with Alonso was no different than his interaction with anyone else in the department.

Besides focusing on Alonso, Shear also highlighted his achievements as a lieutenant with the police department. Various department employees and former employees testified that Shear was a good police officer and made the department feel as though it were a family. These same witnesses claimed that morale in the department had declined after Shear was terminated.

After reviewing the evidence, the Commission issued its decision on December 16, 2011, affirming Shear's termination. The Commission first found that Shear had attempted to maintain a sexual relationship with Alonso, that Shear failed to correct Alonso's inappropriate behavior, that Shear had intimate physical contact with Alonso, that Shear offered to influence a reduction of her suspension in exchange for a sexual relationship, and that Shear excessively communicated with Alonso, using his cell phone issued by the City. The Commission determined this to be prejudicial conduct, immoral conduct, insubordination, discourteous treatment of a fellow employee, an act of omission or commission tending to injure the public service, a willful failure to properly conduct himself, inattention to or dereliction of duty, and in violation of policy and procedure.

The Commission then addressed the "'inner circle'" dynamic within the department, finding that Shear did nothing to intervene regarding the practice, but, rather, reinforced it. The Commission found that this practice tended to undermine the overall efficiency and effectiveness of the department and that Shear's failure to intervene to address this dynamic and his reinforcement of it constituted incompetency, inefficiency or inattention to or dereliction of duty, prejudicial conduct, discourteous treatment of fellow employees, an act of omission or commission tending to injure the public service, a willful failure on the part of Shear to properly conduct himself, and in violation of policy and procedure.

Finally, the Commission found that Shear created and tolerated, and failed to address or correct, an environment within the department in which officers referred to "'black guys as #2'" and "'white guys as #1.'" The Commission

found that Shear's failure to address or correct the practice undermined the overall efficiency and effectiveness of the department and constituted prejudicial conduct, discourteous treatment of the public, an act of omission or commission tending to injure the public service, incompetency, inefficiency or inattention to or dereliction of duty, and in violation of policy and procedure.

The Commission thereafter stated that to the extent that Shear's testimony and evidence were not consistent with its findings, the Commission found Shear's testimony and evidence not credible. After so finding, the Commission noted that its findings and conclusions, whether considered independently or in the aggregate, constituted cause for Shear's termination. The Commission concluded that Johnson's action in terminating Shear's employment was supported by a preponderance of the evidence and was made in good faith for cause, that termination was based on competent evidence and was neither arbitrary nor capricious, and that Shear's claim that he was denied due process of law was without merit.

Shear perfected an appeal to the district court on January 13, 2012. Although Shear's notice of appeal was lengthy, the district court determined that he had essentially raised two assignments of error: (1) His due process rights were violated in his pretermination hearing, and (2) the Commission's decision was arbitrary and capricious and, therefore, not made in good faith for cause. The district court found each of the assigned errors to be without merit and affirmed the Commission's decision. Shear timely appeals.

## ASSIGNMENTS OF ERROR

Shear assigns, consolidated and restated, three errors in his brief. He contends that (1) he was denied his pretermination due process rights, because there was not an impartial decisionmaker at his pretermination hearing; (2) the Commission's order affirming his termination was not made in good faith for cause, but was arbitrary and capricious; and (3) the Commission should not have allowed undisclosed testimony at the hearing.

## STANDARD OF REVIEW

[1,2] The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Fleming v. Civil Serv. Comm. of Douglas Cty.*, 280 Neb. 1014, 792 N.W.2d 871 (2011). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

[3] In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency. *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[4,5] The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Id.* The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did from the testimony and exhibits contained in the record before it. *Id.*

## ANALYSIS

*Pretermination Procedures.*

[6,7] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), the U.S. Supreme Court held that a public employee possesses certain due process rights when state law grants a property right to continued employment. When a state deprives a public employee of this right to continued employment, the deprivation must "'"be preceded by notice and opportunity for hearing appropriate to the nature of the case."'" *Scott v. County of Richardson*, 280 Neb. 694, 700, 789 N.W.2d 44, 50 (2010), quoting *Cleveland Board of Education v. Loudermill, supra.* After *Loudermill*, courts have concluded that procedural due process claims are divided into three stages: pretermination process, actual termination, and posttermination process. See, *Scott v. County of Richardson, supra*; *Parent v. City of Bellevue Civil Serv. Comm.*, 17 Neb. App. 458, 763 N.W.2d 739 (2009).

In the present case, there is no dispute that Shear had a property right in his continued employment with the Wayne Police Department and could not have been discharged without due process. See Code of Ordinances for the City of Wayne, Nebraska, § 26-1 et seq. (2010). However, the parties disagree as to the necessary extent of the pretermination process. Shear argues that the pretermination procedures were insufficient because there was a biased decisionmaker. He claims that because city administrator Johnson was both the complaining party and the adjudicator in the pretermination hearing, Johnson effectively served as "the accuser, the judge, and the executioner," rendering the pretermination process a nullity. Brief for appellant at 12.

In interpreting *Cleveland Board of Education v. Loudermill*, *supra*, the Nebraska Supreme Court has adopted the view that only limited pretermination process is required, especially if posttermination proceedings are available and extensive. *Scott v. County of Richardson*, *supra*, citing *Krentz v. Robertson*, 228 F.3d 897 (8th Cir. 2000). In adopting this view, the court noted that the purpose of a pretermination proceeding is not to resolve the propriety of the discharge, but, rather, to serve as an initial check against mistaken decisions. *Scott v. County of Richardson*, *supra*. Thus, pretermination proceedings need not be elaborate. *Id*. Informal meetings with supervisors are sufficient pretermination proceedings. *Id*.

[8] Despite the foregoing, Shear claims that his case is distinct because Johnson brought the charges and also functioned as the decisionmaker in the pretermination process. This argument fails. The Nebraska Supreme Court in *Scott* held that "deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process." 280 Neb. at 703, 789 N.W.2d at 52 (overruling *Martin v. Nebraska Dept. of Public Institutions*, 7 Neb. App. 585, 584 N.W.2d 485 (1998)).

[9] Although no Nebraska appellate court appears to have confronted this specific scenario, we find the Eighth Circuit's holding in a similar case to be convincing and in line with the Nebraska Supreme Court's decision in *Scott*. The Eighth Circuit, in adopting the prevailing view in the federal circuits

on this issue, specifically rejected the argument that biased decisionmakers in the pretermination process violate due process. The court held that "[a]n impartial decisionmaker is not required at the pre-termination stage so long as the employee has access to post-termination proceedings before an impartial adjudicator." *Sutton v. Bailey*, 702 F.3d 444, 449 (8th Cir. 2012).

In the present case, there is no question that Johnson was not an impartial decisionmaker at the pretermination stage. Johnson not only investigated Shear and brought the charges against him, but he also conducted the pretermination hearing. However, the record reveals extensive posttermination proceedings occurred. After Shear was terminated, he exercised his right to a hearing before the Commission, an impartial adjudicator. At this hearing, which extended approximately 5 days, Shear was represented by an attorney and had the opportunity not only to contradict the City's evidence, but also to present extensive evidence of his own. Following this hearing, the Commission reviewed the evidence and made its decision to uphold the termination. These posttermination procedures provided the required measure of due process. This assigned error is without merit.

## Was Commission's Decision Made in Good Faith for Cause?

For the majority of his brief, Shear attacks the Commission's decision, claiming that it was not supported by a "preponderance of the relevant and competent evidence contained in the record." Brief for appellant at 14. Shear argues that the evidence in the record is decidedly in his favor and that the Commission disregarded the facts and circumstances of the case when it made its decision.

The record in this case contains significantly conflicting evidence. In his hearing before the Commission, Shear responded to every allegation the City raised with his own evidence that supported his cause. The Commission reviewed both parties' evidence and determined that Shear's evidence was not credible. Shear now asks this court to essentially reweigh the evidence and the Commission's findings of fact, substituting

our own judgment. However, as explained above, we do not reweigh evidence or make independent findings of fact when reviewing an administrative agency's decision. See, *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012); *Barnett v. City of Scottsbluff*, 268 Neb. 555, 684 N.W.2d 553 (2004). The record of the hearing demonstrates that the City produced sufficient, relevant evidence to support its decision to terminate Shear's employment and from which the Commission could reasonably find the facts as it did. In our review, we have focused on only those allegations upon which the Commission based its findings to support the termination of Shear's employment. In sum, there was sufficient relevant evidence to support the Commission's findings regarding Shear's inappropriate conduct with Alonso, Shear's involvement in the department practices regarding the "'inner circle,'" and Shear's failure to correct the "number one" and "number two" references.

We agree with the district court that the Commission's decision to affirm Shear's termination was made in good faith for cause. This assigned error is without merit.

*Did Commission Improperly Allow
Testimony at Hearing?*

In his final assignment of error, Shear argues that the Commission improperly allowed the City to expand the basis of his employer's evidence at the hearing without giving him notice. Citing both the Wayne city code and Nebraska's Civil Service Act, Shear argues that he was not properly informed that Amy Miller would testify to additional reasons that would support the City's decision to terminate his employment. See, Neb. Rev. Stat. § 19-1833(1) (Reissue 2012); Code of Ordinances for the City of Wayne, Nebraska, art. II, § 26-46(a). He claims that because the City relied on this testimony in reaching its decision, the result is flawed and must be reversed.

Miller is a deputy county attorney for Wayne and Pierce Counties. At the hearing before the Commission, the City called Miller as a witness to testify regarding her experiences as a county attorney interacting with the Wayne Police

Department. Miller testified that there was a general lack of cooperation between the county attorney's office and the police department, that officers and dispatchers were uncooperative in providing reports, that reports were not timely provided, and that instructions were ignored.

At the hearing, both Shear and the police chief objected to Miller's testimony, arguing that it was not disclosed prior to the hearing. The special counsel overruled these objections, finding that the City disclosed Miller as a witness and that both parties had an adequate opportunity to depose her during the lengthy discovery period prior to the hearing.

We find Shear's argument to be without merit. Although Miller was not mentioned in the City's statement of charges against Shear, she was included as a potential witness in the charges related to the police chief's termination. Further, both Shear and the police chief agreed to have one consolidated hearing related to these two terminations. Therefore, during the hearing, there were a number of times when testimony was given that related to the charges against only one of the individuals. Finally, despite Shear's contention to the contrary, the Commission did not rely upon Miller's testimony in its decision to uphold Shear's termination. In fact, the Commission's findings of fact do not contain any reference to Shear's involvement with the county attorney's office as a ground for his termination. We agree with the district court's conclusion that the Commission did not err when allowing Miller's testimony.

## CONCLUSION

The district court determined that Shear was afforded due process and that the Commission's decision was made in good faith for cause. This was not made in error, and we affirm.

Affirmed.

Irwin, Judge, participating on briefs.